**UNITED STATES of America**

v.

**Charles R. PARMENTER.**

**Crim. No. 81–321–G.**

United States District Court,
D. Massachusetts.

Jan. 11, 1982.

Joseph F. Brennan, Jr., Shrewsbury, Mass., for defendant.

James F. X. Dinneen, Asst. U. S. Atty., Boston, Mass., for U. S.

## MEMORANDUM AND ORDER SUPPRESSING EVIDENCE

GARRITY, District Judge.

On March 19, 1981, Magistrate Alexander issued a warrant directing the search of a multiple family dwelling in Worcester, Massachusetts, by agents of the Bureau of Alcohol, Tobacco and Firearms (ATF). The warrant described the place to be searched as "11 and 13 Benefit St., Worcester, Massachusetts, a brick three story duplex dwelling along with the cellar of said structure and the garage on said property located on the east side of Benefit St., Worcester." The issuance of the warrant was supported by an affidavit (attached as Exhibit A) by ATF Special Agent Douglas Wenner which indicated that, based on information obtained from two confidential informants and surveillance by ATF agents, he had reason to believe that unlawfully possessed firearms were being concealed on the premises.

The apartment of the defendant, Charles Parmenter, was searched pursuant to the warrant described above on March 20, 1981. Three firearms were seized and the defendant was subsequently charged with the unlawful possession of firearms in violation of 18 U.S.C. Appendix, § 1202(a)(1). Defendant now moves to suppress the evidence seized on the ground that the warrant under which it was obtained did not particularly describe the place to be searched as required by the Fourth Amendment to the United States Constitution. Specifically, he contends that since the warrant authorized

the search of the entire premises of a multiple-occupancy structure, when probable cause existed to search only some of the apartments within that structure, the warrant was invalid.

At a hearing held on defendant's motion on November 27, 1981, the following facts were developed. The building located at 11 and 13 Benefit St. is a large 3 story duplex which is divided into eight separate apartments and one or two cellars. Four apartments, two on the first floor, and one on each of the second and third floors, are located at each of 11 Benefit St. and 13 Benefit St. At the time the warrant was executed, seven of the eight apartments were occupied. Defendant lived alone in an apartment on the first floor at the rear of 13 Benefit St. The occupants of the apartments, who were not related to each other, were as follows:

A. 11 Benefit St.

  1. First floor, front ......... Ray Johnson
  2. First floor, rear .......... Gary Zarr
  3. Second floor ............ Robert Walkiewicz
  4. Third floor ............. Susan Candell

B. 13 Benefit St.

  1. First floor, front ......... "A Woman named Sue" [1]
  2. First floor, rear ......... Defendant Parmenter
  3. Second floor ........... Melvin Eriksen
                                 (owner and landlord)
  4. Third floor ............. Vacant

There are four separate entrances to the building, at the front and side of 11 Benefit St., and at the front and side of 13 Benefit St.[2] There is no access between the two sides of the building, i.e., there is no way a person can go between 11 and 13 Benefit St. without leaving by the first floor outdoor entrance of one and entering by the first floor outdoor entrance of the other. Photographs admitted into evidence by the defendant showed that outside the front entrance to 11 Benefit St. there were 4 separate mailboxes and that outside the front entrance to 13 Benefit St. there were 3 separate mailboxes. Defendant testified that each tenant also had his/her own door-

bell located outside one of the two front entrances.

The ATF Bureau had had the building under surveillance for six months prior to the search. Agent Wenner testified that although he had never entered the building prior to the warrant's execution, he knew that several individuals lived inside the building. He did not, however, know exactly where each resident lived. He further testified that at the time of the search, the separate mailboxes at each entrance were visible from the road. Wenner also testified that after he entered the building, he saw no common living areas. There were a series of separate rooms or residences connected only by hallways and stairs. Although the residences, within each side of the duplex building, were not separately numbered, they had separate doors and locks.

The affidavit in support of the challenged warrant shows that prior to the search, cause existed to search only rooms on the first and third floors of 11 Benefit St., the first floor of 13 Benefit St., and the cellar of either 11 or 13 Benefit St. No mention is made in the affidavit of anything suspicious occurring in rooms on the second floor of 11 Benefit St. or on the second and third floor of 13 Benefit St. Reference is made to observations warranting suspicion which were made on the floor on which defendant Parmenter's apartment was located, viz., the first floor of 13 Benefit St. However, neither the affidavit nor the warrant specifies which of the *two* apartments located on the first floor the confidential informant was in when he made his observations.

Given the contents of the affidavit, probable cause was not established at the time the warrant was issued to search one of the apartments on the first floor of 13 Benefit St. nor any of the rooms on the second floor of 11 Benefit St., the second floor of 13 Benefit St., and the third floor of 13 Bene-

---

1. At the hearing, defendant testified that he did not know the last name of the woman who resided in the first floor front apartment at 13 Benefit St.

2. The front entrances to each of 11 and 13 Benefit St. were located on the sides of the duplex building.

fit St. Nevertheless a total search of all of the apartments or rooms located on each floor of 11 and 13 Benefit St. was actually conducted by ATF agents. The issue presented is whether the warrant in this case which directed the search of an entire multiple occupancy structure and contained no specification of the particular sub-units to be searched, when probable cause was shown for searching less than all of the sub-units, is invalid under the Fourth Amendment. For the reasons outlined below, we hold that it is and hereby grant defendant's motion to suppress.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated and *no warrant shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.* Fourth Amendment, United States Constitution (emphasis added).

■ Federal courts consistently have held that the Fourth Amendment's requirement that a "place" be particularly described, when applied to dwellings, refers to a single living unit or residence. *United States v. Hinton,* 7 Cir. 1955, 219 F.2d 324. When a building under suspicion is divided into more than one occupancy unit, probable cause must exist for each unit to be searched, *United States v. Whitney,* 9 Cir. 1980, 633 F.2d 902 at 907, *cert. denied,* 1981, *Whitney v. United States,* 450 U.S. 1004, 101 S.Ct. 1717, 69 L.Ed.2d 208; *United States v. Dorsey,* 1978, 192 U.S.App.D.C. 313, 591 F.2d 922; *United States v. Hinton, supra* at p. 326, and a warrant must describe the particular sub-unit or units to be searched. *United States v. Higgins,* 7 Cir. 1970, 428 F.2d 232 (affidavit for search warrant referring to basement apartment in a building with three separate apartments in basement, was fatally defective for failure to describe with particularity the place to be searched); *United States v. Chin On,* D.C.Mass.1924, 297 F. 531, 533. The general rule is that a warrant which describes an entire building as the place to be searched when probable cause exists for searching only one apartment unit therein is void. *United States v. Whitney, supra; United States v. Votteller,* 6 Cir. 1976, 544 F.2d 1355; *United States v. Esters,* E.D.Mich. 1972, 336 F.Supp. 214 at p. 218; *Hinton, supra; United States v. Diange,* W.D.Pa. 1940, 32 F.Supp. 994; Annot., 11 A.L.R.3d 1330 (1967) and cases cited therein at pp. 1333–1339.

The most frequently cited case for the general principles outlined above is *United States v. Hinton, supra,* the case upon which defendant principally relies. In *Hinton,* defendant-appellants were arrested and convicted of narcotics offenses after a search of the entire building in which they lived. The building, described by its address in the warrant, contained four separate apartments. One of the two defendant-appellants owned the building; the other was a tenant there. The warrant was issued upon an affidavit which indicated that the affiant had seen heroin being sold on the premises by four different persons. *Id.,* at p. 325. The affidavit neither identified the particular apartment or apartments in which the sales were made nor alleged that the sales were made in apartments occupied by any of the alleged sellers. *Id.,* at p. 325. In invalidating the warrant, the Seventh Circuit stated:

> ... the scope of the warrant to search is dependent upon the extent of the showing of probable cause. The command to search can never include more than is covered by the showing of probable cause to search.

> For purposes of satisfying the Fourth Amendment searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house, or in this case each apartment.... A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence unless

it be shown that although appearing to be a building of several apartments the entire building is actually being used as a single unit. *Hinton, supra* at p. 325–326.

The *Hinton* court explicitly rejected an argument by the Government that the warrant could be upheld on the ground that its supporting affidavit showed probable cause to search the residences of the four women to which it referred. "It may well be that the affidavit showed probable cause to search the residences of the four women referred to, provided they could be accurately identified from the aliases given," the court stated. *Id.*, at p. 326. "But the affidavit does not establish probable cause to search the entire building without the allegation of facts to show that each of the apartments in the building was the residence of at least one of the persons alleged in the affidavit to have been selling narcotics." *Id.*, at p. 326.

The *Hinton* court was not able to find, on the record before it, that innocent persons had suffered an unjustified search as a result of the overbroad warrant. Nevertheless, it stated that even if it had turned out after the search that the persons named in the affidavit were the only residents of the building and that no innocent persons had actually suffered an unjustified search, the warrant would still be invalid. *Id.*, at p. 326. As the court explained:

> The validity of the warrant is dependent on the facts shown in the affidavit before the issuing authority. The affidavit (here) . . . did not justify the ensuing warrant and the fact that no harm was done . . . would not validate a warrant invalid because of its failure to "particularly" describe the place to be searched. We are not being overtechnical in this. We are merely insisting, as we must, that in issuing search warrants the requirements of the Fourth Amendment must be met. *Id.*

Over the years the courts have recognized certain exceptions and qualifications to the general rule that a warrant which fails to specify the particular sub-unit to be searched within a multiple occupancy structure is void. Some courts have held, for example, that a warrant which is overbroad in its description is valid when the *only* apartment actually searched in a multi-occupancy structure was that for which probable cause was clearly established at the time of the warrant's issuance. *United States v. Campanile*, 2 Cir. 1975, 516 F.2d 288; *Moore v. United States*, 1972, 149 U.S. App.D.C. 150, 461 F.2d 1236; *United States v. Gomez*, D.D.C., S.D.N.Y.1967, 42 F.R.D. 347; *United States v. Poppitt*, D.Del.1964, 227 F.Supp. 73; *see also United States v. Bedford*, 3 Cir. 1975, 519 F.2d 650, *cert. denied, Bedford v. United States*, 1976, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323; *United States v. Darensbourg*, 5 Cir. 1975, 520 F.2d 985; but *see United States v. Hinton, supra*, at p. 326–327. Other courts have decided that a warrant which describes a multiple-family dwelling as the place to be searched and fails to specify a particular sub-unit therein may be upheld in one or more of the following situations:

1. the warrant adequately identifies the sub-unit by naming its occupant, *United States v. Bedford, supra; Commonwealth v. Cohen*, 1978, 6 Mass.App. 653, 382 N.E.2d 1105; *Commonwealth v. Lillis*, 1965, 349 Mass. 422, 209 N.E.2d 186;

2. the officers who applied for and executed the warrant did not know or have reason to know of the multi-unit character of the premises prior to the actual search, *United States v. Whitney, supra* at p. 907 n.3; *United States v. Rios*, 10 Cir. 1979, 611 F.2d 1335, 1347, *cert. denied, Rios v. United States*, 1981, 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422; *United States v. Dorsey*, 1978, 192 U.S.App.D.C. 313, 591 F.2d 922; *United States v. Santore*, 2 Cir. 1960, 290 F.2d 51, *aff'd in relevant part*, 2 Cir. 1960, 290 F.2d 74 (en banc), *cert. denied*, 1961, 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744; *Owens v. Scafati*, D.C.Mass.1967, 273 F.Supp. 428, *cert. denied*, 1968, 391 U.S. 969, 88 S.Ct. 2043, 20 L.Ed.2d 883; *United States v. Poppitt*, D.C.Del.1964, 227 F.Supp. 73;

3. it is shown that defendant exercised dominion or control over the entire premises, *United States v. Whitney, supra* at p. 907; *United States v. Page*, 7 Cir. 1978, 580 F.2d 916; *United States v. Gusan*, 7 Cir. 1977, 549 F.2d 15, *cert. denied* 1977, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379;

4. probable cause is established to search the entire premises, *United States v. Gill*, 8 Cir. 1980, 623 F.2d 540, *cert. denied, Gill v. United States*, 1980, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94; *United States v. Olt*, 6 Cir. 1974, 492 F.2d 910; or

5. the deficiency of description contained in the warrant can be cured by reference to its supporting affidavit and such affidavit is attached to the warrant at the time of its execution and incorporated by reference therein, *United States v. Gill, supra* at p. 543; *United States v. Johnson*, 8 Cir. 1976, 541 F.2d 1311, 1315; *Moore v. United States*, 1972, 149 U.S.App.D.C. 150, 461 F.2d 1236.

■ The Government argues that the warrant in this case should be upheld under exception 2 above, since the agents did not know that 11 and 13 Benefit St. was a multi-occupancy structure until after their search was already under way. We reject this argument, however. The test to be applied is not whether the agents actually knew but rather whether they should have known of the building's multi-occupancy character prior to their search. *United States v. Votteller, supra* at p. 1363–1364; *United States v. Esters*, D.C.Mich.1972, 336 F.Supp. 214, 219. In contrast to the evidence presented in each of the cases relied on by the Government to support its theory,[3] the evidence here suggests that the multi-occupancy character of 11 and 13 Benefit St. was reasonably apparent prior to the search. The building was a large, 3-story duplex structure with four separate entrances. 11 and 13 Benefit St. were located back-to-back rather than side-by-side. Photographs submitted by the defendant showed that there were 4 separate mailboxes at the entrance to 11 Benefit St. and 3 separate mailboxes at the entrance to 13 Benefit St. There were also separate doorbells to each of the tenants' apartments. Agent Wenner testified that the ATF Bureau had the building under surveillance for six months prior to the search. Although he had never been inside the building prior

---

**3.** The Government relies on three cases to support its theory that this case fits into exception 2 above, viz., *United States v. Santore, United States v. Whitney*, and *United States v. Dorsey, supra*. Each is distinguishable from the present one. The building searched in *United States v. Santore, supra*, was to all outward appearances a single family house with a front door and a side door and it had always been registered with the local authorities as a one-family dwelling. The court there explicitly found that the house had been subdivided in contravention of local ordinances without permission of local authorities and thus, officials had no notice of the house's dual occupancy. *United States v. Santore, supra* at p. 67.

The D.C. Circuit determined in *United States v. Dorsey, supra*, that the police could not, with reasonable investigation, have found out prior to the search that the building specified was subdivided into distinct living quarters only after it found that: (1) the rooming house had no outward signs of multiple residency such as separate entrances, doorbells, mailboxes, name plates, apartment numbers or "room for rent" signs; (2) the police knew the dwelling was not registered as a rooming house; (3) there was only one usable entrance to the dwelling; (4) the police found the doors to the upstairs bedrooms had no numbers or locks and were usually left open, bearing out the view that any occupant had "the run" of the whole structure; (5) residents were not billed separately for telephones and electricity; and (6) police inquiry prior to the search indicated that only 3 persons lived at the house permanently at the time of the search. *United States v. Dorsey, supra* at p. 929.

The warrant and search in *United States v. Whitney, supra*, were upheld not only because the court found that the police there did not have reason to know of the house's dual occupancy character until after their search, but also because the court accepted a lower court's finding that since the defendant in that case had full control over the entire house, probable cause existed to search the entire premises. *Whitney, supra* at p. 908. In *Whitney*, a confidential informant had described the living arrangement involved as the defendant "utilizing" the upper level and another individual "utilizing" the lower level of a two-story house. At the time of the search, the house had only one street number and one mailbox.

to the warrant's execution, he knew that several individuals lived there and the separate mailboxes at each entrance were clearly visible from the road.

In addition, the information reported in the affidavit itself put the agents on notice of the building's multi-occupancy character. Agent Wenner stated that confidential informant # 2 had told him that individuals under suspicion lived on specified floors.[4]

On the basis of this evidence, we are unable to find that the agents did not have reason to know of the multi-occupancy character of 11 and 13 Benefit St. prior to the search. Indeed, in our view, this case is closer on its facts to *United States v. Esters, supra*, than to any of the cases cited by the Government. In *Esters*, the court held that a search warrant authorizing the search of the premises at a particular street address which did not specify the particular unit to be searched was invalid where the building was, in fact, a two-family house, even though the officers believed that the house was a single family dwelling. In so doing, the court found that the facts that the house had 2 mailboxes, doorbells and electric meters, each of which were visible from a sidewalk or alley, put the officers on notice of the house's dual occupancy nature.

The supporting affidavit in this case, unlike those in *Hinton, supra*, and *Esters, supra*, arguably provides more specificity at least with respect to the floors of the building under suspicion. However, we find that it cannot be used to cure the warrant's deficiency of description. The warrant itself makes no reference to the affidavit and there is no evidence in the record that the affidavit accompanied the warrant.[5] Even if the affidavit were attached to and incorporated by reference, it still would not cure the deficiency since the affidavit itself failed to specify which of the *two* separate apartments on the first floor of 13 Benefit St. was to be searched.

The Government argues, in the alternative, that even if the warrant herein is overly broad, there need not be an automatic exclusion of the evidence seized from defendant's apartment, since probable cause was established in the affidavit to search the area where the defendant's firearms were found. Government's Memorandum in Opposition to Defendant's Motion to Suppress, p. 3. We reject this argument for two reasons. First, as stated *ante*, the affidavit itself fails to specify which of the *two* separate apartments on the first floor of 13 Benefit St. was to be searched. Second, the Government's reliance solely upon a dictum statement in a footnote in *United States v. Curwood*, D.Mass.1972, 338 F.Supp. 1104, to support its position seems misplaced. *Curwood* is distinguishable from the present case since the search actually conducted under the warrant in that case in fact did not extend beyond the limited part of the building to which the warrant should have been restricted. *United States v. Curwood, supra*, n. 11 at p. 1111.

The determining factor as to whether a search warrant describes the premises to be searched with sufficient particularity is whether the description given is sufficient to enable the executing officer to locate and identify the intended premises with reasonable effort, *Steele v. United*

---

4. On p. 1 of the affidavit, for example, Wenner states, "C.I. # 2 told me that Kevin O'Brien lived on the third floor of 11 Benefit St." On p. 2 he reports, "C.I. # 2 told me that an individual known as 'cleancut' later identified as Roy L. Johnson, Jr., sleeps in the first floor room of 11 Benefit St." . . . (and) . . . that a Robert Walkiewicz lives on the first floor of 13 Benefit St. . . ." We note, for the record, that there is an apparent inconsistency in the affidavit as to where the suspect Walkiewicz actually lived. Wenner states that confidential informant # 2 told him that Walkiewicz had a room on the first floor of 13 Benefit St. (where defendant.

Parmenter actually lived). Affidavit, p. 2. However, he also states that information obtained from 3 other sources, viz., the March 1981 telephone directory, the Worcester 1980 city directory, and Walkiewicz's car registration, indicated that he lived at 11 Benefit St. (where he, in fact, lived).

5. As noted *ante*, an affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant, *and* the warrant uses suitable words of reference which incorporates the affidavit. *United States v. Klein*, 1 Cir. 1977, 565 F.2d 183.

*States No. 1*, 1925, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757, and whether there is any reasonable probability that other premises might be mistakenly searched which are not the ones intended to be searched under the warrant. *United States v. Sklaroff*, D.C. Fla.1971, 323 F.Supp. 296; *United States v. Votteller*, 6 Cir. 1976, 544 F.2d 1355, 1363; *United States v. Esters, supra*, at p. 219. It is undisputed that the search in this case, as actually conducted, went beyond those apartments for which probable cause to search was established to apartments for which no probable cause was shown. No matter how narrowly one construes the general rule applied in *Hinton* and *Esters, supra*, it reaches at least far enough to invalidate a warrant which is so indefinite in its description as to result in the search of the apartments of innocent persons for which no probable cause was shown. What occurred here is exactly what the Fourth Amendment's requirement of particularity of description and the federal court's interpretation of that requirement were designed to prevent, viz., the mistaken and unlawful intrusion by police officials into the homes of innocent persons.

Accordingly, defendant's motion to suppress the evidence taken from his apartment is granted.

## AFFIDAVIT

I, Douglas M. Wenner, Special Agent, Bureau of Alcohol, Tobacco and Firearms do swear to the following:

During the past two years I have received reliable information from a confidential informant, herein referred as C.I # 1 provided me with information, which after investigation, resulted in the indictment, arrest and conviction of two individuals in U.S. District Court, Boston, Massachusetts C.I # 1 has also provided reliable information to the state police which also resulted in convictions in state courts.

Over the past three years I have received reliable information from a second confidential informant, herein referred to as C.I # 2. This confidential informant has provided reliable information to local police, which after investigation resulted in the arrest and indictment of an individual in Worcester District Court, Worcester, Massachusetts. On February 19, 1981 I received information from C.I # 1 that Kevin O'Brien and Robert P. Walkiewicz were residing at 11 and 13 Benefit Street, Worcester, Massachusetts. C.I # 1 informed me that he had received information from a friend or Kevin O'Brien that numerous firearms were being held in 11 and 13 Benefit Street, Worcester, Massachusetts.

On March 10, 1981 I received information from C.I # 2 that he had been in 11 and 13 Benefit Street, Worcester, Massachusetts during the first week in March 1981. C.I # 2 told me that Kevin O'Brien lived on the third floor of 11 Benefit Street, Worcester, Massachusetts. C.I # 2 told me that during the first week of March 1981, he observed Kevin O'Brien carrying a pistol. He observed Kevin O'Brien with other handguns in the aforementioned room on the third floor. C.I # 2 told me that he observed Kevin O'Brien sell firearms, stolen goods and narcotics with an individual named "Skippy" and that these goods were sold from the third floor room at 11 Benefit Street.

C.I # 2 told me that during the week of March 1–7, 1981 he observed approximately fifteen long guns on the wall in a first floor room at 11 Benefit Street, Worcester, Massachusetts. C.I # 2 told me that an individual known as "cleancut" later identified as Roy L. Johnson, Jr., sleeps in the first floor room of 11 Benefit Street, Worcester, Massachusetts.

C.I # 2 told me that a Robert Walkiewicz lives on the first floor of 13 Benefit Street, Worcester, Massachusetts. C.I # 2 told me that Robert Walkiewicz, by his own admission, sells firearms and he had observed firearms in Walkiewicz's room on the first floor of 13 Benefit Street, Worcester, Massachusetts. C.I # 2 told me that during the week of March 1–7, 1981 he observed expended shell casings on the stairs of 11 Benefit Street, Worcester, Massachusetts. C.I # 2 stated he observed a "sawed-off" shotgun in the cellar of 11 and

13 Benefit Street, Worcester, Massachusetts.

C.I # 2 informed me that within the past forty-eight hours he observed a pump shotgun in the third floor room of 11 Benefit Street, Worcester, Massachusetts which appeared to have a short barrel. C.I # 2 also observed Kevin O'Brien carrying a pistol in the third floor room. C.I # 2 said he observed that the pistol was a 9mm. It appeared to be a German Luger type with a stainless steel clip. C.I # 2 said O'Brien said the firearm was stolen.

C.I # 2 told me that within the past forty-eight hours he observed numerous firearms on the wall of the first floor of 11 Benefit Street, Worcester, Massachusetts. C.I # 2 also observed a "sawed-off" shotgun and a "high powered rifle" in the cellar of 11 and 13 Benefit Street, Worcester, Massachusetts.

A check with the postal authorities shows Robert P. Walkiewicz, Joyce M. Bindman and Robert Kelly receiving mail at 11 Benefit Street, Worcester, Massachusetts and Melvin H. Erickson and Robin Forget receiving mail at 13 Benefit Street, Worcester, Massachusetts.

The March 1981 telephone directory and Worcester, 1980 city directory lists Robert Walkiewicz and Roy L. Johnson living at 11 Benefit Street, Worcester, Massachusetts and Phillip Bragg and Melvin H. Erickson as living at 13 Benefit Street, Worcester, Massachusetts.

Surveillance over the past two weeks by ATF agents has shown the following vehicles parked at 11 and 13 Benefit Street, Worcester, Massachusetts:

A 1970 Ford Econoline Van, color white, Massachusetts registration A/B 22831 listed to Robert P. Walkiewicz, 11 Benefit Street, Worcester, Massachusetts;

1970 Chevrolet Caprice Sedan, color blue, Massachusetts registration 700 FXA listed to David A. Graveline;

A brown Lincoln Continental, Massachusetts registration 204FIE listed to Kevin O'Brien, 53 Beaver St., Worcester, Massachusetts;

A 1969 Ford Van, color blue, Massachusetts registration A/B 92034 listed to Charles Parmenter.

On March 19, 1981, Nancy DiLeo, Probation Department Worcester District Court, Worcester, Massachusetts informed me that on January 25, 1973 Roy L. Johnson, Jr. was found guilty of assault and battery with a dangerous weapon in Worcester Superior Court, Worcester, Massachusetts, a crime punishable by more than one year in prison.

On February 22, 1971 Robert P. Walkiewicz was found guilty of possession of a dangerous weapon in Worcester District Court, a crime punishable by more than one year in jail.

On January 14, 1981, Joyce M. Bindman was found guilty of larceny over $100.00 in Worcester District Court, a crime punishable by more than one year in jail.

On February 3, 1981, Charles Parmenter was found guilty of breaking and entering in the night-time with intent to commit a felony and larceny of a motor vehicle, crimes punishable by more than one year in prison.

On November 20, 1978 Phillip E. Bragg was convicted of possession of a class B narcotic drug in Worcester District Court, a crime punishable by more than one year in prison.

On May 11, 1972 Melvin H. Erickson was found guilty of two counts of possession of a narcotic drug and three counts of possession of a harmful drug in Worcester District Court, a crime punishable by more than one year in prison.

On February 22, 1971, David A. Graveline was found guilty of possession of a dangerous weapon in Worcester District Court, a crime punishable by more than one year in jail.

On November 6, 1974, Kevin O'Brien was convicted of possession of a destructive device in U.S. District Court, Boston, a crime punishable of up to 10 years in prison.

On March 18, 1981 at or about 6:06 p. m., Special Agent Stuart A. Martin saw a white male walking on the ground in front of 11

Benefit Street, Worcester, Massachusetts. The individual was carrying a long gun in one hand, from the vacinity of a brown Lincoln Continental which is believed to be owned by Kevin O'Brien. This vehicle has been observed by other ATF agents parked in front of 11 Benefit Street, Worcester, Massachusetts on several occasions during the past two weeks.

On March 19, 1981, I telephoned ATF Firearms and Explosives Licensing Section, North Atlantic Region, New York, New York. Doris Banks, Examiner, informed me that neither Kevin O'Brien nor Robert P. Walkiewicz possess a license to sell firearms as required by Title 18, United States Section 922(a)(1).

On March 19, 1981, a check was made by Special Agent Stuart A. Martin as to any registration of National Firearms Act Weapons by Melvin H. Erickson, Roy L. Johnson, Jr., David A. Graveline, Kevin O'Brien, Robert P. Walkiewicz and Phillip E. Bragg. All queries proved negative as to registration.

DOUGLAS M. WENNER,
Special Agent
Bureau of Alcohol,
Tobacco & Firearms

Sworn to before me, and subscribed in my presence, March 19, 1981.

JOYCE LONDON ALEXANDER
United States Magistrate

APPENDIX "A"

Form A. O. 93 (Rev. Apr. 1973)            **Search Warrant**

# United States District Court
## FOR THE

### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Docket No. |
| | Case No. |
| VS. | |
| 11 and 13 Benefit Street Worcester, MA | **SEARCH WARRANT** |

**To**    any authorized person

**Affidavit(s) having been made before me by**    Douglas M. Wenner, Special Agent Bureau of Alcohol, Tobacco & Firearms

**that he has reason to believe that** { ~~on the person of~~ on the premises known as }
11 and 13 Benefit Street, Worcester, Massachusetts, a brick three story duplex dwelling along with the cellar of said structure and the garage on said property located on the east side of Benefit Street, Worcester,

         **in the**          **District of** Massachusetts

**there is now being concealed certain property, namely**   short barrelled shotgun and other firearms including a luger type    here describe property pistol with a silver clip.

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above described and that grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s).

*You are hereby commanded* to search within a period of __ten (10) days_____ (not to exceed 10 days) the person or place named for the property specified, serving this warrant and making the search { in the daytime (6:00 a.m. to 10:00 p.m.) ~~at any time in the day or night~~* } and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant and bring the property before _____ as required by law.
     *Federal Judge or magistrate*
JOYCE LONDON ALEXANDER

Dated this   19th day of   March     , 19 81

                   *Judge (Federal or State Court of Record) or Federal Magistrate.*
           JOYCE LONDON ALEXANDER

*The Federal Rules of Criminal Procedure provide: "The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." (Rule 41(c)). A statement of grounds for reasonable cause should be made in the affidavit(s) if a search is to be authorized "at any time day or night" pursuant to Rule 41(c).

Form A. O. 106 (Rev. Apr. 1973)

# United States District Court

## FOR THE
### DISTRICT OF MASSACHUSETTS

Docket No._____

Case No._____

UNITED STATES OF AMERICA

VS.

11 and 13 Benefit Street
Worcester, MA

**AFFIDAVIT FOR
SEARCH WARRANT**

**BEFORE**   JOYCE LONDON ALEXANDER
Name of Judge¹ or Federal Magistrate

Boston, MA
Address of Judge¹ or Federal Magistrate

The undersigned being duly sworn deposes and says:

That he has reason to believe that (on the person of)
(on the premises known as)

11 and 13 Benefit Street, Worcester, Massachusetts, a brick
three story duplex dwelling along with the cellar of said
structure and the garage on said property located on the
east side of Benefit Street, Worcester

in the     District of   Massachusetts

there is now being concealed certain property, namely  short barrelled shotgun
and other firearms including a luger type pistol here describe property with
a silver clip.

which are   evidence of possession of unregistered sawed-off
shotguns, (26, USC, here give alleged grounds for search and seizure¹ 5861) unlicensed
dealing in firearms 18, USC, 922(a)(1) and felons in possession
of firearms, 18, USC, Section 1202.

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant
are as follows:¹

DOUGLAS M. WENNER, Special Signature of Affiant. Agent
Bureau of Alcohol, Tobacco & Firearms
Official Title, if any.

Sworn to before me, and subscribed in my presence,  March 19        , 19 81

JOYCE LONDON ALEXANDER Judge¹ or Federal Magistrate.

¹United States Judge or Judge of a State Court of Record.
²If a search is to be authorized "at any time in the day or night" pursuant to Rule 41(c), show reasonable cause therefor.
³If the warrant is to authorize execution pursuant to 21 U.S.C. § 879 without prior notice of authority or purpose, indicate the circumstances creating the
need for such a warrant.