469 So.2d 1310 (1985)
STATE of Alabama
v.
Larry TEAGUE.
3 Div. 28.
Court of Criminal Appeals of Alabama.
January 8, 1985.
Rehearing Denied February 12, 1985.
Certiorari Denied April 19, 1985.
*1312 H. Lewis Gillis, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Joseph G.L. Marston III, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-500.
BOWEN, Presiding Judge.
The issue presented by this appeal is whether a search warrant which inaccurately described a multiple unit dwelling by failing to specify the appropriate subunit is invalid. Larry Teague was indicted for the unlawful possession of marijuana. His pretrial motion to suppress was granted after the trial court found that the search warrant did not particularly describe the place to be searched. The court's findings of fact and order are attached to this opinion as Appendix A. The State appeals from this order pursuant to A.R.Crim.P. Temp. 17(a). We find the search warrant sufficient and reverse the order of the trial court suppressing the controlled substances seized from Teague's apartment.

I
The search warrant authorized the search of the "residence of Allena Curry located at 439 South Goldthwaite Street, Montgomery, Alabama." Mrs. Curry was the defendant's mother. The defendant and his wife rented a portion of the house from Mrs. Curry.
The structure at 439 South Goldthwaite Street is an old two-story house. Mrs. Curry operated a beauty shop on a portion of the first floor and lived on the second floor. The defendant and his wife lived in a separate apartment on the first floor. There was no access from the apartment to the other portions of the house and Mrs. Curry and her son shared no part of the house in common. The defendant's apartment had its own outside entrance and doorbell. However, the house and the apartment were not separately numbered and shared the same address. There was only one mailbox in front of the house. All the utilities were billed to Mrs. Curry at 439 South Goldthwaite Street.
In his affidavit for the search warrant, Alabama Bureau of Investigation Officer Jamie Thomas stated that he had received information from a confidential and reliable informant that the informant "had observed a large quantity of marihuana and other narcotic drugs at the residence of Allena Curry, 439 South Goldthwaite Street." Thomas also stated that he had "conducted surveillance at ... [this residence] *1313 and personally observed known drug users going in and out of said residence."
The affidavit did not contain a statement identifying the defendant as an occupant of the premises. At the suppression hearing, Officer Thomas testified that his informant told him that the defendant "stayed there at his mother's place" and that the drugs were in the defendant's room. Thomas knew that the house contained a business run by Mrs. Curry, that Mrs. Curry "stayed upstairs", that the defendant "stayed" at the back of the house, and that there was a separate door to that portion of the house. The "known drug users" Officer Thomas observed had used that door.
Despite these known facts, Officer Thomas did not realize that the house was divided into separate units. Thomas considered the "whole house ... as one residence" and did not know that the defendant lived in an "apartment" without access to the remainder of the house.
Although the officer knew that the defendant "stayed" in a particular part of the house, he testified that he did not identify the specific location in his affidavit because he had never been inside the house and could not describe the interior. He did not mention the defendant in the affidavit because he "didn't think it was needed", since he considered the house as a single residence. He testified:
"Yes, sir, because of the fact that Ms. his mother here owned the house. The address is registered in her name, the power, the lights, and everything else was in her name, not Larry Teague's name."
* * * * * *
"Sir, in a residence like that, that's the only way you can do it. Just he stayed there, and the addresshis mail comes in that address, and the address is the address."
* * * * * *
"Well, sir, all of them stayed there; you could say that."
* * * * * *
"It's all part of one house, sir."
* * * * * *
"Well, it's all one house, sir. If anyone wants to look at it, they would say the same thing. The address is the same, he gets his mail at the same address."
* * * * * *
"Well, both of them [defendant and Mrs. Curry] stay in that house, then; that's the way I consider that. It's the same address and everything."
Initially, we reject the State's contention that the defendant has no standing to object to the overbreadth of the search warrant. The State's argument is based on a minority view, Annot., 11 A.L.R.3d 1330, § 4 (1967), and that view is subject to valid criticism.
"To say that a defendant `was not prejudiced because the search did not extend beyond his apartment, would overlook the fundamental basis of the constitutional requirements' and make `admissibility depend on success of the search' notwithstanding the fact the warrant `vests the officer with selective discretion in determining where he could search.'" W. LaFave, 2 Search And Seizure 81 (1978).
A search warrant must "particularly" describe the place to be searched. U.S. Const. Amend IV; Alabama Code 1975, § 15-5-3. The traditional and accepted statement of the particularity required is found in Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925): "[I]t is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended."
"[T]he determining factor as to whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description given is technically accurate in every detail but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any *1314 reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant." United States v. Darensbourg, 520 F.2d 985, 987 (5th Cir.1975).
The Fourth Amendment's "place" terminology, when applied to dwellings, refers to a "single living unit."
"Federal courts have consistently held that the Fourth Amendment's requirement that a specific `place' be described when applied to dwellings refers to a single living unit (the residence of one person or family). Thus, a warrant which describes an entire building when cause is shown for searching only one apartment is void." United States v. Hinton, 219 F.2d 324, 326 (7th Cir.1955).
"As applied to dwelling houses, the particular `place' required to be described means a single living unit, that is to say the residence of one person or family,...." People v. Govea, 235 Cal.App.2d 285, 300, 45 Cal.Rptr. 253 (1965).
"[T]he scope of the warrant to search is dependent upon the extent of the showing of probable cause. The command to search can never include more than is covered by the showing of probable cause to search." Hinton, 219 F.2d at 325. "Therefore, when the structure under suspicion is divided into more than one occupancy unit, probable cause must exist for each unit to be searched." United States v. Whitney, 633 F.2d 902, 907 (9th Cir. 1980), cert. denied, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981).
"[A] search warrant directed against a multiple-occupancy structure will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons." Annot., 11 A.L.R.3d at 1333. The general rule is that "a search warrant directed at a multiple-occupancy structure will ordinarily be held invalid if it describes the premises only by street number or other identification common to all the subunits located within the structure. What is needed is a description which singles out a particular subunit." 2 LaFave 78-9. See also C. Torcia, 1 Wharton's Criminal Procedure § 166 (12th ed. 1974); 68 Am.Jur.2d Searches and Seizures § 77 (1973).
There are several recognized exceptions to this rule:
"[A] warrant which describes a multiple-family dwelling as the place to be searched and fails to specify a particular sub-unit therein may be upheld in one or more of the following situations:
"1. the warrant adequately identifies the sub-unit by naming its occupant....;
"2. the officers who applied for and executed the warrant did not know or have reason to know of the multi-unit character of the premises prior to the actual search....;
"3. it is shown that defendant exercised dominion or control over the entire premises....;
"4. probable cause is established to search the entire premises....;
"5. the deficiency of description contained in the warrant can be cured by reference to its supporting affidavit and such affidavit is attached to the warrant at the time of its execution and incorporated by reference therein."

United States v. Parmenter, 531 F.Supp. 975, 979-80 (D.Mass.1982) (citations omitted).
Here, the evidence indicates that exception number two is applicable because the officer who applied for the warrant did not know or have reason to know of the multi-unit character of the premises prior to the actual search. Officer Thomas knew that the defendant was selling drugs at his mother's house. The informant told Thomas that the defendant "stayed there at his mother's" and that the drugs were in the defendant's "room".
From the record, it is clear that Officer Thomas had no knowledge that the defendant lived in a separate unit or subunit without access to the remainder of the house. The only evidence to arouse any *1315 suspicion of a separate apartment known to Officer Thomas when he obtained the warrant were the facts that the defendant had a separate entrance to his residence and that the known drug users had been seen using the defendant's door. Although there were two doors at the back of the house, this fact, either alone or in conjunction with the other information available to Officer Thomas, does not lead to the conclusion that the house was divided into subunits. The record does not show that Thomas knew that each door had its own doorbell before he obtained the warrant. "It was reasonable for the officers to accept the evidence of their senses and to conclude that a house that looks like an ordinary one-family house is what it appears to be." State v. Maulding, 29 Or. App. 511, 564 P.2d 729, 730 (1977). See Watts v. State, 434 N.E.2d 891, 894 (Ind. App.1982) ("[T]he house appeared to be a single residence because it resembled other houses in the area which had two front doors, one leading into the living room and one into a bedroom.").
The fact of the two doors and the fact that a portion of the house was used as a beauty shop lose significance when placed against the officer's knowledge that there was only one mailbox, that all the utilities were in Mrs. Curry's name, and that Mrs. Curry was the defendant's mother. Here, as in United States v. Gilman, 684 F.2d 616, 618 (9th Cir.1982), "[t]he officers were not aware that the building contained separate living quarters or that it housed unrelated persons."
Although Officer Thomas knew that the house was occupied by three people, the relationships of those threemother, son, and daughter-in-lawis consistent with a single family and a single living unit. Jackson v. State, 129 Ga.App. 901, 201 S.E.2d 816, 819 (1973) (It would be "unrealistic" to require "the enforcement officers to determine if a daughter or son pays rent while residing in the same house as their parents and if their use of the house is restricted."). In Govea, supra, a search warrant directed to a specific address occupied by Mendoza was held valid. Mendoza used the front part of the house as a bedroom. The defendant (Mendoza's brother-in-law), his wife (Mendoza's sister), and their children were staying in a bedroom. "This does not show that the premises were not a single living unit. Indeed it is consistent with its being such in view of the family relationship." 235 Cal.App.2d at 300-301, 45 Cal.Rptr. 253. See also Sparks v. State, 77 Okl.Cr. 431, 142 P.2d 379, 380 (1943), where the defendant's married son and his small daughter occupied two rooms of the defendant's house: "[T]he court would have been fully justified in concluding that defendant was the head of the household and that the son was merely a member of his household." In Gill v. State, 71 Okl.Cr. 247, 110 P.2d 926, 928 (1941), the defendant's niece and her husband were living with the defendant. The court upheld the warrant and concluded "that a John Doe search warrant, designating the place to be searched by a single street address, describes more than one `place' and is insufficient where two or more separate family establishments are maintained at the same address; only one `place' is described and the warrant is sufficient where, at a single street address, the occupants reside as one family, even though rooms are rented and the tenants of such rooms are not, under the circumstances, shown to be keeping separate establishments within the home of said occupants." In People v. Bell, 53 Ill.2d 122, 290 N.E.2d 214, 217 (1972), the "particular apartment was one unit for residential use" even though it was occupied by the defendant, his mother, the defendant's young nephew, and several others who rented separate bedrooms from the mother. See also United States v. Bright, 563 F.Supp. 354 (D.C. 1982); Lawson v. State, 296 P.2d 515 (Okla.Cr.App.1956).
These cases stand for the proposition that a multi-occupancy structure is not always a multiple-unit structure.
"Initially, we note that a multiple-occupancy structure is not automatically a multiple-unit structure. The essential ingredient *1316 regarding specificity requirements for search warrants in this context relates not to the number of occupants but to the existence of separate units or subunits within a structure. The mere fact that a structure contains several residents who are not related to one another does not automatically convert its rooms into `subunits'." State v. Willcutt, 19 Or.App. 93, 526 P.2d 607, 608 (1974).
Where the officers involved in executing the warrant do not know that the structure is a two-family dwelling, "the test is whether they should have known that the building was not a one-family home." United States v. Esters, 336 F.Supp. 214, 219 (E.D.Mich.1972); People v. Franks, 54 Mich.App. 729, 221 N.W.2d 441, 443-45 (1974). "The test to be applied is not whether the agents actually knew but rather whether they should have known of the building's multi-occupancy character prior to their search." Parmenter, 531 F.Supp. at 980. "Absent a finding by the trial court that the police officers knew or should have known when they obtained the search warrant that the building involved was multi-unit in character, the warrant and resulting search and seizure have been held to be constitutionally permissible." Franks, 221 N.W.2d at 445. Here, a careful reading of the judge's order reveals that such a finding was never made.
The tenor of the trial judge's order granting the motion to suppress is that Officer Thomas could have and should have described the defendant's residence more particularly. Implicit, but not specifically stated, is the finding that there was no probable cause to search anywhere other than the defendant's residence because Thomas "knew the controlled substances were located in the defendant's apartment only."
Although Officer Thomas knew that the defendant "stayed" in the rear of the house, and Mrs. Curry "stayed" upstairs, the fact that the utilities were in Mrs. Curry's name would tend to indicate that the defendant and his mother shared some of the facilities in common. See United States v. Foster, 711 F.2d 871, 879 (9th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). This reasonable probability that the defendant had access to the rest of the house would supply probable cause to search the entire house.
"In the community-occupation situation, the courts have held that a single warrant describing the entire premises so occupied is valid and will justify search of the entire premises....
"[W]here a significant portion of the premises is used in common and other portions, while ordinarily used by but one person or family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises. For example, if three persons share an apartment, using a living room, kitchen, bath and hall in common but holding separate bedrooms which are not locked, whichever one of the three is responsible for the described items being in the apartment could have concealed those items anywhere within, including the bedrooms of his cotenants." 2 LaFave at 81.
See also People v. Gorg, 157 Cal.App.2d 515, 321 P.2d 143 (1958). "The outward appearance as one residential unit and the potential opportunity for residents to have full access and cooperation even if they are not family-related has caused courts to recognize full unit searches even if there is a prime suspect." State v. Suits, 73 Wis.2d 352, 243 N.W.2d 206, 210-11 (1976). See also United States v. Whitten, 706 F.2d 1000, 1008 (9th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984) ("But a warrant may authorize a search of an entire street address while reciting probable cause as to only a portion of the premises if they are occupied in common rather than individually, if a multiunit building is used as a single entity, if the defendant was in control of the whole premises, or if the entire premises are suspect."). *1317 "To establish probable cause to search a residence, two factual showings are necessaryfirst, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." United States v. Travisano, 724 F.2d 341, 345 (2d Cir.1983).
It is only where the police know, or with reasonable investigation could have discovered, that the building specified was subdivided into several distinct living quarters that the police are "under a responsibility to pinpoint the offending unit or units and the incriminating evidence likely to be found therein so that the issuing magistrate could determine which of the residents' separate privacy expectations could reasonably be disappointed through the execution of a search warrant." United States v. Dorsey, 591 F.2d 922, 929 (D.C. Cir.1979). "[W]here the dwelling is a single family dwelling and there are no external signs that its status has been changed,... it would be unrealistic to require the police to ascertain ... who occupies what portion of the house." Jackson, 201 S.E.2d at 819.
Officer Thomas's conclusion that the house at 439 South Goldthwaite Street, occupied by three people, was a single residence was reasonable and justifiable, although mistaken in fact. It would have been unreasonable under the facts of this case, considering the family relationship and the fact that all the utilities were in Mrs. Curry's name, to assume that the defendant did not have access to other portions of the house. See Houser v. Geary, 465 F.2d 193 (9th Cir.1972), cert. denied, 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973).
"Because no investigation had, nor reasonably should have, apprised the police of the dwelling's multi-residence character, the `entire premises' warrant met the specificity requirement under the Fourth Amendment." Dorsey, 591 F.2d at 930. Even if "additional investigation might have produced additional facts, ... the Fourth Amendment requires reasonableness, not certainty." Maulding, 564 P.2d at 730. In reaching this result "[w]e are aware that the researched case law, including the above cited cases, is factually distinguishable from the case at bar. Nevertheless, in applying the same legal principles to the particular facts of the instant case, we conclude that the search... and seizures pursuant thereto were in all respects legal." State v. Weaver, 442 So.2d 380, 382 (Fla.Dist.Ct.App.1983). We recognize that "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).
"The apartment-search cases, however, have eschewed `over-technical[ity],' United States v. Hinton, supra, 219 F.2d at 326, and have not ignored the `realities of administration of criminal justice,' Moore v. United States, supra, 149 U.S.App. D.C. [150] at 152, 461 F.2d [1236] at 1238 [(D.C.Cir.1972)]. Instead, they require only as much specificity as police officers, with `practical accuracy,' United States v. Santore, 290 F.2d 51 [2nd Cir. 1959], aff'd in relevant part en banc, 290 F.2d 74 (2d Cir.1960), cert. denied, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961), may provide." Dorsey, 591 F.2d at 929.
"A general description may be acceptable in a warrant if a more precise description is not possible." United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir.1984), cert. denied, ___ U.S.___, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). "A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." Ventresca, 380 U.S. at 108, 85 S.Ct. at 746.

II
Part of the confusion and difficulty generated by the problem we address in Issue I of this opinion is due to the fact that the affidavit and warrant do not contain any reference to the defendant. However, *1318 this absence did not render the warrant invalid. "Search warrants are not directed at persons; they authorize the search of `place[s]' and the seizure of `things', and as a constitutional matter they need not even name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 555, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978). "In fact, as long as the property to be seized is described with sufficient specificity, even a warrant failing to name the owner of the premises at which a search is directed, while not the best practice, has been held to pass muster under the Fourth Amendment." United States v. Kahn, 415 U.S. 143, 155, n. 15, 94 S.Ct. 977, 984, n. 15, 39 L.Ed.2d 225 (1974). "Though desirable, it is not essential to the validity of a search warrant that the owner or occupant of the premises be named." Dixon v. United States, 211 F.2d 547, 549 (5th Cir.1954). "In general, it is better that a search warrant contain the name of the owner or occupier of the premises to be searched, but there is no constitutional requirement that it do so." Cabble v. State, 347 So.2d 546, 550 (Ala.Cr.App.), cert. denied, Ex parte Cabble, 347 So.2d 551 (Ala.1977).
"When reviewing an application [for a search warrant], courts must also bear in mind that search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found.... The affidavit in support of a warrant need not present information that would justify the arrest of the individual in possession of or in control of the property. Nor is it required that the owner be suspected of having committed a crime. Property owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant." United States v. Tehfe, 722 F.2d 1114, 1117-18 (3d Cir.1983), cert. denied, Sanchez v. United States, ___ U.S. ___, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984).
We note that the better practice in cases involving multiple occupancy is to describe the building or residence with the addition of "a phrase such as `the premises occupied by [the defendant] and over which he has possession and control.'" State v. Ratushny, 82 N.J.Super. 499, 198 A.2d 131, 135 (1964).
"The basic requirement is that the officers who are commanded to search be able from the `particular' description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed. This requirement may be satisfied by giving the address of the building and naming the person whose apartment is to be searched." Hinton, 219 F.2d at 326.

III
Once the officers discovered the multi-unit character of the house, they were not required to abandon the search in order to obtain a warrant with a more particular description designating the defendant's apartment. The officers had already "tipped their hand", 2 LaFave at 80, and "[a]t that moment it was too late for them, consistent with the success of their mission, to have retreated and obtained a new warrant." United States v. Santore, 290 F.2d 51, 67 (2d Cir.1959), cert. denied, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961). Although the defendant was not home and no one was in his apartment, the defendant's mother had been notified that law enforcement officers were going to search her son's apartment. Under these circumstances, it would be unreasonable to require the officers to risk the possibility that the evidence would be destroyed while they attempted to obtain a new warrant.
In conclusion, we hold that the search warrant provided an adequate description and particularization of the place to be searched to pass constitutional muster. It has been suggested that the exception to the general rule which we have applied in this case should be narrowly construed and applied only when three factors are present. 2 LaFave at 80. The facts of this case satisfy those conditions. (1) The officers conducted a reasonable investigation, *1319 including a check with the utility companies, to determine the character of the residence. The description of the residence was consistent with the outward appearance of the house and with the results of their investigation. (2) The discovery of the multi-unit character of the house occurred only "after the police had proceeded so far that withdrawal would jeopardize the search." 2 LaFave at 80. (3) Finally, we note that upon discovery that the defendant occupied a separate apartment, the officers confined their search to his residence only.
The judgment of the circuit court suppressing the controlled substances seized from the defendant's apartment is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
HARRIS and PATTERSON, JJ., concur.
TYSON, J., dissents with opinion.
TAYLOR, J., joins in dissent.

APPENDIX A

CIRCUIT COURT

FIFTEENTH JUDICIAL CIRCUIT

CC-84-609-G

STATE OF ALABAMA, Plaintiff,

v.

LARRY TEAGUE, Defendant.

ORDER
On December 1, 1983, Alabama Bureau of Investigation Officer Jamie Thomas secured a search warrant to search the residence of Allena Curry located at 439 South Goldthwaite Street in Montgomery, Alabama. Allena Curry is the mother of the defendant.
Prior to securing the warrant Officer Thomas had received information from a reliable confidential informant that he (the informant) had seen a large quantity of drugs at the residence. Additionally, Thomas (the affiant) stated that he had "conducted surveillance at 439 South Goldthwaite Street and personally observed known drug users going in and out of said residence." A search was conducted of the defendant's apartment located at 439 South Goldthwaite Street, and drugs were seized. No search was conducted at the business or living area of Mrs. Curry. No exigent circumstances existed.[1] Officers assisting in the search entered the beauty shop and served the search warrant on Mrs. Curry. Officer Thomas had stationed himself outside defendant's apartment door.
Defendant filed a motion to suppress the controlled substances seized from his apartment. The evidence at the hearing revealed that within the premises at the address 439 South Goldthwaite Street there is a beauty shop (operated by Mrs. Curry), a downstairs living or sitting room and upstairs living area occupied solely by Mrs. Curry, and a separate apartment occupied by defendant and his wife. There is no separate street address or mailbox number for the defendant's apartment. All utilities are billed to Mrs. Curry at 439 South Goldthwaite Street. The defendant's apartment has only an outside entrance and is not inter-connected through Mrs. Curry's business or living quarters. Defendant's apartment has a separate doorbell and contains a kitchen area, living/bedroom combination and a bathroom.
The court concludes from the evidence that Officer Thomas knew who occupied the apartment, he knew that it had a separate entrance, he knew the general configuration of the apartment, he knew the controlled substances were located in the defendant's apartment only, he knew how to describe to get to the defendant's apartment, and he knew that the known drug users were going to and coming from the defendant's apartment. Officer Thomas testified that he could have secured another search warrant that more specifically described the defendant's apartment.
*1320 The court further finds that the defendant has rented the apartment from his mother for six (6) years, and he and his wife do not share the remainder of the premises with his mother. Mrs. Curry does not have common access to the apartment and the apartment has had a separate entrance for at least fifteen (15) years.
The residence that was searched was the residence of defendant and not that of Allena Curry. The court further concludes that Officer Thomas never intended to search anywhere other than the apartment of the defendant.
The issue is whether the search warrant describes with particularity the place to be searched as required by United States Constitution, Amendment IV and Ala.Code § 15-5-3. The court finds that the warrant does not authorize a search of the defendant's apartment and that the drugs seized therefrom are to be suppressed, cf., Hutto v. State, 50 Ala.App. 636, 282 So.2d 75 (Ala.Ct.App.1973). See, generally, W.R. LaFave, Search and Seizure: A Treatise On The Fourth Amendment § 4.5(b) (1978).
It is ORDERED that the controlled substances seized from defendant's apartment on December 1, 1983 are SUPPRESSED.
DONE and ORDERED in chambers this 21st day of May, 1984.
 /s/ William R. Gordon
 WILLIAM R. GORDON
 Circuit Judge
District Attorney
Lewis Gillis
TYSON, Judge, dissenting.
I respectfully dissent from the majority opinion as prepared in this cause by our distinguished presiding judge. Judge Bowen has accurately set forth the basic facts from which the legal issues arise in this cause. He has also, in my opinion, correctly set forth the applicable law with reference to the construction to be placed upon the search warrant here at issue. It is the conclusion of the majority with which I respectfully disagree.
At issue in the cause is a search warrant for the "residence of Allena Curry located at 439 South Goldthwaite Street, Montgomery, Alabama." The utilities were registered in the name of the defendant's mother, Mrs. Curry. Only one mailbox was in front of the house. The majority opinion correctly sets out the applicable test to be here used as to the search warrant at issue, namely: "The test to be applied is not whether the agents actually knew but rather whether they should have known of the building's multi-occupancy character prior to the search." United States v. Parmenter, 531 F.Supp. 975, at 980 (D.Mass.1982).
The majority opinion notes as follows:
"The tenor of the trial judge's order granting the motion to suppress is that Officer Thomas could have and should have described the defendant's residence more particularly. Implicit, but not specifically stated, is the finding that there was no probable cause to search anywhere other than the defendant's residence because Thomas `knew the controlled substances were located in the defendant's apartment only.'
"Although Officer Thomas knew that the defendant `stayed' in the rear of the house, and Mrs. Curry `stayed' upstairs, the fact that the utilities were in Mrs. Curry's name would tend to indicate that the defendant and his mother shared some of the facilities in common."
Officer Thomas knew from talking with his informant that there was a separate entrance to the living quarters of the appellant at the rear of the house. His informant had told him that he had seen persons coming and going from this door and had made purchases there.
The front ground floor portion of the structure in question has been used as a beauty parlor for a number of years. In my judgment, this was sufficient to put Officer Thomas on notice of the multiple use character of the residence in question.
Therefore, in my judgment, this case falls squarely within the rules enunciated by this court in Hutto v. State, 50 Ala.App. *1321 636, 282 So.2d 75 (1973), and authorities therein cited. Specifically, the annotation set forth in 11 ALR 3d 1330, et seq., since more than one party was using the premises as a residence, necessarily a multiple use construction must be placed upon the warrant here at issue.
In my judgment, the officers failed to provide specific details or a sufficient description concerning the residence of the appellant within the structure in which his residence was located.
Search warrants are not creatures of the common law. Section 15-5-3, Code of Alabama 1975 requires the supporting affidavit and warrant to particularly describe the property and the place to be searched. Since the affidavit and warrant, here at issue, fail to specifically describe the residence of the appellant within the structure in which same was located, or to advise the issuing judge as to the multiple use character of the residence in question, I would hold the warrant to be constitutionally deficient.
Though construing a search without a warrant, Mr. Justice Faulkner in Lietz v. State, 291 Ala. 133, 279 So.2d 116 (1973), stated:
"Unless we enforce the restrictions of the Fourth Amendment and Article 1, § 5 of the Alabama Constitution on searches and seizures, an old saying will have to be revised. A man's home will no longer be his `castle,' but, his `open house' for everyone with a shred of governmental authority who wants to come inside. This cannot be permitted."
Therefore, the warrant was properly suppressed by the trial judge in this cause. Hence, I vote to affirm this case.
TAYLOR, J., joins in the dissent.
NOTES
[1] Thomas testified that he knew defendant and his wife were at work.