**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Kenneth VOTTELLER et al.,**
**Defendants-Appellants.**

**Nos. 76–1089—76–1093.**

United States Court of Appeals,
Sixth Circuit.

Argued June 24, 1976.

Decided Nov. 10, 1976.

Robert E. Fleming, Louisville, Ky., for Kenneth R. Votteller.

Eldon L. Webb, U.S. Atty., Richard E. Duerr, Jr., Lexington, Ky., for appellee.

Stuart L. Lyon, Lewis G. Benham, Louisville, Ky., for Foch Karem, Jr., and James Burtel.

John J. Kelley, Jr., H. Fred Hoefle, Cincinnati, Ohio, for Bernard Esselman.

Richard M. Sullivan, Louisville, Ky. (Court-appointed CJA), for Paul Robert Rhodes.

Richard Slukich, Robert W. Carran, Covington, Ky., for George Gradel.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is a consolidated appeal of six appellants, Kenneth Votteller, Foch Karem, Jr., James L. Burtel, Bernard Esselman, Paul Robert Rhodes and George Gradel from their convictions in the United States District Court for the Eastern District of Kentucky, on counts one and two of a seven-count indictment charging conspiracy to violate and violation of Federal gambling laws. The appellants, herein, were jointly indicted with twelve others in various counts of the indictment returned on March 31, 1975.

Eight of the original defendants pleaded guilty before trial. The remaining ten went to trial which began on July 15, 1975. Seven of the defendants, including the appellants on this appeal, were convicted on counts one and two of the indictment.

Briefly stated, counts one and two are as follows: Count One, charges a conspiracy in violation of Section 371, Title 18, U.S.C. to

commit the following offenses; (1) being in the business of betting and wagering to knowingly and willfully use wire communication facilities for the transmission in interstate commerce of bets and wagers on sporting and racing events which entitles the recipient to receive money and credit as a result of such bets and wagers in violation of Section 1084, Title 18, U.S.C., (2) to knowingly and willfully conduct a continuous illegal bookmaking business for a period of more than thirty days with a gross revenue of more than Two Thousand Dollars ($2,000) on one or more single days and having at least five persons supervising and managing it in violation of Section 1955, Title 18, U.S.C., (3) to use telephone communications facilities in interstate commerce to establish, carry on and facilitate the promotion and carrying on of an unlawful business enterprise involving gambling, betting and wagering on sporting events and horse racing and, thereafter, to carry on and facilitate the carrying on of such unlawful activity in violation of Section 1952(a)(3), Title 18, U.S.C., (4) to knowingly carry, send and cause to be sent in interstate commerce, slips, papers, writings and other devises for use in wagering with respect to sporting events such as football games, in violation of Section 1953, Title 18, U.S.C. Overt acts are alleged in support of the foregoing specific charges.

Count Two, did knowingly and willfully continuously operate a gambling bookmaking business, with a gross revenue of at least Two Thousand Dollars ($2,000) on one or more single days, for more than thirty days, involving at least five persons in its conduct, management and supervision in violation of Section 1955, Title 18, U.S.C.

Appellants Votteller, Esselman and Rhodes allege that the trial judge erred in not suppressing evidence obtained by electronic surveillance for the reason that it did not follow the statutory procedure.

■ Section 2516, Title 18, U.S.C. provides:

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, * * * an order authorizing or approving the interception of wire * * * communications by the Federal Bureau of Investigation * * * having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of * * * (c) any offense which is punishable under the following sections of this title: * * * Section 1084 (transmission of wagering information), * * * *"

On January 28, 1974, William R. Saxbe, Attorney General, issued a designation as follows:

"I hereby specially designate the Assistant Attorney General in charge of the Criminal Division to exercise the power conferred by Section 2516 of Title 18, United States Code, to authorize applications to a Federal Judge of competent jurisdiction for orders authorizing the interception of wire or oral communication * * * *."

In conformity with this designation, Henry E. Peterson, on October 29, 1974, authorized the wire interception complained of herein. It is objected that the Attorney General's designation is not directed to a specially named assistant or to a specific request for an order of interception.

We conclude that the procedure followed by the Attorney General in this case meets the requirements of the statute.

In *United States v. Pellicci,* 504 F.2d 1106, (1st Cir. 1974), *cert. den.* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975), the Assistant Attorney General in charge of the Criminal Division was designated by job title rather than by name. The Court said, p. 1107,

"But the designation of a single person accomplished by job title rather than by name does not run afoul of the legislative intent recognized in *United States v. Giordano,* 416 U.S. 505, 520, 94 S.Ct. 1820,

40 L.Ed.2d 341, (1974), that the authority to approve applications be both narrowly confined and limited to those responsive to the political process. And the fact that Henry E. Peterson, who authorized the application, was by precise title the 'Assistant Attorney General of the Criminal Division' in no way calls into question his identity as the individual whom Bork [Act. Atty. Gen'l] intended to designate."

We do not consider that the lapse of time from the designation by the Attorney General, January 28, 1974, to the exercise of the authority by the Assistant Attorney General, October 29, 1974, is of any significance.

In *Giordano, supra,* the application was authorized by the Attorney General's Executive Assistant. The Court held that Congress did not intend the power to authorize wire tap applications be exercised by any individuals other than the Attorney General or an Assistant Attorney General specially designated by him. The procedure followed herein meets that requirement.

Appellants Votteller, Burtel and Karem claim that there is not sufficient evidence to support their convictions on the charge of conspiracy in Count One. Burtel and Karem present this issue jointly in their brief and Votteller presents it separately in his brief. In neither the joint nor the separately stated claim is there a denial of the existence of the conspiracy to which Joseph Anthony Mark Albers was a party and which had its communication center in Erlanger, Kentucky.

Burtel and Karem argue that they were two men of a three man (Votteller) separate gambling operation in Louisville, Kentucky, connected to the Albers center operation by the exchange of results and pay-off bets. Votteller claims that there is no evidence connecting him to the Burtel, Karem operation.

There is evidence that Votteller, Burtel and Karem maintained a three man gambling operation in Louisville, Kentucky. There is also evidence (through intercepted telephone conversations on the wire tap of Albers telephone) that this three man gambling operation maintained contacts with Albers gambling center at Erlanger, Kentucky for the exchange of gambling information involving bets, horse racing information, etc.

In considering the sufficiency of evidence to support a conviction, the evidence must be considered in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Tarter,* 522 F.2d 520 (6th Cir. 1975). Once a conspiracy is established, only slight evidence is necessary to connect a defendant with it. *United States v. Chambers,* 382 F.2d 910, 913 (6th Cir. 1967); *United States v. Hoffa,* 349 F.2d 20, 46 (6th Cir. 1965), aff'd. 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

Knowledge of a criminal plan is a factual issue which may be proved by circumstantial evidence. It is not necessary that there be evidence of a formal agreement in order to have an unlawful conspiracy. *United States v. Levinson,* 405 F.2d 971 (6th Cir. 1968); *United States v. Luxenberg,* 374 F.2d 241, 249 (6th Cir. 1967).

We conclude that there was sufficient evidence to be submitted to the jury upon the issues involved.

The appellants, Votteller, Burtel and Karem, were convicted of the substantive offense of a violation of Section 1955, Title 18, U.S.C. as charged in Count Two of the indictment. They claim that there is insufficient evidence to support these convictions.

Burtel and Karem argue that it is contrary to Congressional intent to include a small three-man operation with another operation even though they exchanged lay-off bets and gambling information with the other operation. There is no merit to this claim. *United States v. Ceraso,* 467 F.2d 653, 656 (3rd Cir. 1972); *United States v. Leon, et al.,* 534 F.2d 667 (6th Cir. 1976).

■ Votteller argues that the monitored calls do not make him a part of the three-man operation, including Burtel and Karem, engaged in the illegal gambling activity with the Albers operation at Erlanger, Kentucky. In *Ceraso, supra,* p. 656, "conduct" was held "to mean any participation in the operation of a gambling business." See also *United States v. Leon, et al., supra.* We hold that the jury could find from the evidence that Votteller was a participant in the gambling operation with Burtel and Karem at Louisville, Kentucky and, therefore, guilty of the substantive offense charged in Count Two of the indictment.

Appellants Karem, Burtel and Esselman claim that the Court erred in not suppressing the evidence of their conversations obtained through intercepted telephonic communications of wire tapped telephones. It is their contention that they were known by the Government to be involved in the offense being investigated and that their names should have been included in the application and order authorizing the wire tap.

■ Section 2518(1)(b)(iv), Title 18, U.S.C. provides that any application for an order authorizing the interception of wire communications shall include "the identity of the person, if known, committing the offense and whose communications are to be intercepted." The test of whether the identity of a person shall be included in the application or interception order is determined by whether there is probable cause to believe that that individual is committing the offense for which the wire tap is sought. *United States v. Kahn,* 415 U.S. 143, 155, 94 S.Ct. 977, 39 L.Ed.2d 225; *United States v. Fromin et al.,* 540 F.2d 846 (6th Cir. 1976).

This presents a question of law but must be determined by the trial judge on the facts of each individual case. The trial judge held a hearing in Catlettsburg on July 7, 1975, to determine these and other legal questions. The interception order under consideration here was dated October 31, 1974. The affidavit accompanying the application for this order does not mention the names of appellants Burtel and Esselman.

■ Special Agent Harold Harrison testified that, prior to the interception order, Esselman's name was not connected with the offense under investigation. Special Agent John Barry testified that his only dealing with gambling operations of Esselman was prior to 1971. Special Agent Harrison stated that, prior to filing the affidavit, he "did not know the name, the man or anything connected with Mr. Burtel." We conclude that there was not probable cause to identify Esselman or Burtel with the gambling operation under investigation.

■ The name of Foch Karem, Jr. does appear in the affidavit in support of the application filed for the intercept order of October 31, 1975, which was granted by the court. His name does not appear in the *application* or *interception order.* The allegations in the affidavit concerning appellant Karem refer to activities prior to May 18, 1975. It appears that subsequent to that date he was not under investigation.

The trial judge heard this evidence at the hearing on July 7, 1975 and concluded that there was not probable cause to believe that Karem was involved in the gambling enterprise under investigation. The question before him presented a factual issue and we cannot say that his finding was clearly erroneous or an abuse of discretion. We, therefore, affirm the trial court on this issue.

*United States v. Donovan,* 513 F.2d 337 (6th Cir. 1975) can be distinguished from the case at bar on the facts. There the Court found that there was sufficient factual evidence from which the Government should have known the involvement of the gambling suspect.

■ The appellants Foch and Burtel claim that the government failed to allege and prove that the Court had jurisdiction of the charge of violating the gambling laws. The appellant Esselman claims that the Court erred in denying his Motion to dis-

miss the second count of the indictment for want of jurisdiction and venue. The essence of these claims is that the second count of the indictment was defective for failure to allege venue.

Rule 7(c)(1) F.R.Cr.P. does not require venue to be alleged in the indictment. It provides in part, "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * *" In *United States v. Branan*, 457 F.2d 1062, 1065 (6th Cir. 1972) the Court said "The necessity for proof of venue does not, however, require an allegation of venue in the indictment itself." See also *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963) *cert den*. 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498; *United States v. Honneus*, 508 F.2d 566, 570 (1st Cir. 1974) *cert. den*. 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975).

■ Karem and Burtel question the jurisdiction of the Court in the Eastern District of Kentucky to try them.

Sec. 3237(a), Title 18, U.S.C. provides in part,

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

According to the evidence, the activities of Karem and Burtel began in the Western District of Kentucky and were completed in the Eastern District of Kentucky. Thus, the Court in the Eastern District had jurisdiction for trial. *United States v. Whitaker*, 372 F.Supp. 154, 158 (1974) aff'd. 503 F.2d 1400 (3rd Cir. 1974).

Appellants Karem and Burtel claim that the wire tapping by which the Government obtained its evidence was a violation of Kentucky statutory law and, therefore, it should have been suppressed. K.R.S. Sec. 526.020 makes eavesdropping, which may be accomplished by means of an electronic, mechanical or other device, a felony. Divulging or releasing such illegally obtained information is a misdemeanor. K.R.S. Sec. 526.060. These statutes became effective January 1, 1975. The electronic interception in the case at bar occurred in November 1974.

The district judge denied the appellants' motion to suppress this evidence for the reason that it was justified under the provisions of K.R.S. 503.040. This section provides in part " * * * conduct which would otherwise constitute an offense is justifiable when it is required or authorized by a provision of law imposing a public duty or by a judicial decree."

■ Evidence lawfully obtained under federal law is admissible in federal courts even though it may possibly be a violation of state law. *United States v. Eddie Hodge and Nathaniel Robertson*, 539 F.2d 898 (6th Cir.) decided July 23, 1976; *On Lee v. United States*, 343 U.S. 747, 754–755, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *United States v. Shaffer* 520 F.2d 1369, 1371–1372 (3rd Cir. 1975); *United States v. Neville*, 516 F.2d 1302, 1309 (8th Cir. 1975); *United States v. Armocida*, 515 F.2d 49, 51–52 (3rd Cir. 1975); *United States v. Keen*, 508 F.2d 986, 988–989 (9th Cir. 1975); *United States v. Infelice*, 506 F.2d 1358, 1365 (7th Cir. 1974).

■ We conclude that the Motion to suppress the evidence the Government obtained against these appellants by wire tapping was properly denied.

■ We find no merit to the claim of counsel for Paul Robert Rhodes that the court erred in refusing to give him a continuance for the trial beginning July 15, 1975. The letter of April 24, 1975, sent out to all counsel for the defendants meets the requirements of Sec. 2518(9), Title 18, U.S.C. By this letter counsel were advised that they could receive, from the Clerk of the Court, a copy of the court order and accompanying application under which the interception was authorized and that if they had

any difficulty, Government counsel would assist them in getting the documents.

There was no abuse of discretion by the trial judge in denying the Motion for continuance.

■ The trial judge did not err in limiting the cross examination of witness Joseph Albert. On his own Motion the district judge disallowed a question asking the witness what certain brain operations entailed. In spite of the ruling the witness answered he didn't know. Aside from this, counsel was allowed wide latitude in cross examination and did effectively cross examine the witness. There is no indication of prejudice to the defendant by the ruling of the district judge which was within his discretion.

■ The trial judge was not in error in permitting the introduction of Rhodes' telephone toll records over the objections of counsel, for the reason that they were not inspected and copied by counsel prior to trial. We agree with the trial judge that the Motion of counsel did not show that the records in question were material to the issues involved. Neither did there appear to be any prejudice to the appellant by their introduction.

Appellant George Gradel claims that the Court erred in denying his Motion to suppress the evidence that was obtained by the execution of a search warrant to search the premises of 57 Euclid Avenue for the reason that the warrant was illegal.

The building at 57 Euclid Avenue was a multi-use building consisting of three floors with apartments on the second and third floors and the basement. The Starlight Bar was on the first floor. The place to be searched was described as follows:

"57 Euclid Avenue, Kenton County, Kentucky. A three-story red brick structure, the first floor of which contains the Starlight Bar, 224 Elm Street, Ludlow, Kentucky. This structure also has an entrance onto Euclid Avenue, known as 57 Euclid Avenue. Within this 3-story structure is located telephone number

581–8421. This structure is located on the northeast corner of the intersection of Elm Street and Euclid Avenue, Ludlow, Kentucky. * * * "

The supporting affidavit contained statements that George Gradel was seen leaving the Starlight Bar and placing money in a parking meter where a 1970 Oldsmobile, Kentucky License C8–664, was parked. Gradel then returned to the building. The Oldsmobile was identified as one to which the license was issued to George Gradel, 493 General Drive, Ft. Wright, Kentucky.

We inquire, first, whether any evidence obtained through the use of this search warrant was admitted at the trial against the appellant, George Gradel.

The Government says, in its brief, that no evidence obtained through the search was admitted at the trial. Witness Harold S. Harrison testified on cross examination that four telephones were seized at the premises searched with numbers beginning with 8421, 8422, 8423 and 8424. (Tr. 1203). He also testified, "A quantity of paraphernalia was seized." (Tr. 1204). This evidence was obtained as a result of the search of the premises at 57 Euclid Avenue and was damaging and prejudicial to the appellant.

This being true, we must next inquire as to the legality of the search warrant. In this connection we are concerned only with the description of the premises to be searched.

With respect to the degree of specificity required of a search warrant's description of premises to be searched, the Supreme Court has stated:

"It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States No. 1*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); See also *United States v. Bowling*, 351 F.2d 236 (6th Cir. 1965) cert. den. 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966); *United States v. Hassell*, 427 F.2d 348 (6th Cir. 1970).

As we pointed out in *United States v. Lemmens*, 527 F.2d 662, 666 (6th Cir. 1976), " * * * the Fourth Amendment 'safeguard is designed to require a description which particularly points to a definitely ascertainable place so as to exclude all others.' " (Citation omitted)

In *United States v. Bedford*, 519 F.2d 650, 654–655 (3rd Cir. 1975), *cert. den.* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323, the Court said,

"Consonant with the fourth amendment's dictate that warrants particularly describe the place to be searched, a search warrant directed against an apartment house will usually be held invalid if it fails to describe the particular apartment to be searched with sufficient definiteness to preclude a search of other units located in the building and occupied by innocent persons."

See also *United States v. Higgins*, 428 F.2d 232 (7th Cir. 1970); *Tynan v. United States*, 297 F. 177, 179 (9th Cir. 1924), *cert. den.* 266 U.S. 604, 45 S.Ct. 91, 69 L.Ed. 463 (1924), where it was stated,

"No doubt a general search warrant for an entire building, * * * occupied by different families or different tenants, is ordinarily null and void."

In *United States v. Darensbourg*, 520 F.2d 985, 987 (5th Cir. 1975), the Court quoted with approval from *United States v. Sklaroff*, 323 F.Supp. 296 (7 D.Fla.1971) as follows:

" * * * the determining factor as to whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description given is technically accurate in every detail but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort and whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the warrant."

▄ A warrant describing an entire building when cause is shown for searching only one apartment is void. The Court said in *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955),

"Federal courts have consistently held that the Fourth Amendment's requirement that a specific 'place' be described when applied to dwellings refers to a single living unit (the residence of one person or family). Thus, a warrant which describes an entire building when cause is shown for searching only one apartment is void."

The Court further said, with reference to searching different residences in the same building, p. 325–326,

"For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment. If such cause is shown there is no reason for requiring a separate warrant for each resident. A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit." Approved in *United States v. Olt*, 492 F.2d 910, 911 (6th Cir. 1974).

▄ We do not consider that the number of the telephones alleged to be installed in the premises to be searched, as stated in the warrant, was any aid to the required particularity of the description. The Government stated in its brief, "However, no additional information was available." We find no evidence that the Government agents made any effort to get a more detailed description of the premises to be searched. Government agents cannot be heard to say that they did not know or that they made an honest mistake in the description.

In *United States v. Esters*, 336 F.Supp. 214, 219 (E.D.Mich.1972) Judge Kennedy said,

"The test to be applied in this situation, however, is not whether the officers had actual knowledge, but the test is whether they should have known that the building was not a one-family home."

In such cases the presence or absence of external indicia may be considered—e. g. dual mail boxes, doorbells, utility meters, assigned street addresses—of independent residences, etc. The Government agents might have checked with the Telephone Company for the location of the telephone, the number of which they alleged in the search warrant.

In *United States v. Harris*, 486 F.2d 1404 (6th Cir. 1973), this Court affirmed without opinion a finding of the Northern District Court of Ohio (365 F.Supp. 261, 262 (1972)), "* * * that the agents being aware of the facts and circumstances surrounding the physical configuration of the residential dwelling here in question, and the fact that it was occupied by three distinct families, their failure to particularly describe the place to be searched and thereafter searching the entire building constitutes an illegal search and consequently an illegal seizure."

We conclude from the authorities cited here, that the search warrant was illegal and void for the failure to accurately describe the premises to be searched. It was error, therefore, to admit testimony obtained as a result of the execution of the search warrant.

Accordingly, we vacate the judgment of conviction against the appellant George Gradel and remand his case to the District Court for a new trial. If there is not sufficient evidence without the use of evidence obtained by the execution of the search warrant to justify a new trial, we direct that the indictment against Gradel be dismissed.

In all other respects the judgments of the District Court are affirmed.