892 F.2d 1042
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joiada Elijah McKENZIE, Defendant-Appellant.
 No. 89-5552.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 11, 1989.
Decided: Dec. 19, 1989.
 
 Scott L. Wilkinson, Thomas P. McNamara, McNamara, Pipkin, Knott & Carruth, on brief, for appellant.
 Margaret P. Currin, United States Attorney, Geoffrey R. Brigham, Department of Justice, on brief, for appellee.
 Before K.K. HALL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Joiada Elijah McKenzie was convicted of conspiracy to possess with intent to distribute and to distribute in excess of five kilograms of cocaine and marijuana, in violation of 21 U.S.C. § 846; use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and unlawful travel in interstate commerce in violation of 18 U.S.C. § 1952(a). He was sentenced under The Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551, et seq., to 108 months imprisonment. He appeals from both his firearm conviction and the Guidelines sentence. Finding that the search which uncovered the firearm was proper and that the evidence supports the firearm conviction, we affirm. We also find no error in the application of the Guidelines and we affirm the sentence.
 
 
 2
 * In late 1987, McKenzie and a codefendant, Dexter Moore, shared an apartment in Raleigh, North Carolina, from which they sold marijuana. On one occasion, another codefendant, Jonathon Klein, visited this apartment and attempted to trade two pistols for $500 worth of cocaine. Since neither McKenzie nor Moore had a sufficient amount of cocaine, McKenzie telephoned codefendant Claudius King in an attempt to arrange a deal. King later came to the apartment and paid Klein $500 for the guns. Klein then used this money to purchase drugs from both Moore and King. During this transaction, McKenzie asked Klein to locate a nine-millimeter handgun for him.
 
 
 3
 In early 1988, McKenzie moved into a small, two-bedroom apartment at 104 Dupont Circle, Raleigh, North Carolina. About one month later, King moved in with him. Each man occupied his own bedroom and shared the apartment's kitchen and bathroom. Both men sold drugs from this apartment. The evidence at trial showed that while King sold large quantities of cocaine and marijuana, McKenzie's drug sales were limited to small amounts of marijuana.
 
 
 4
 In April 1988, King and McKenzie drove to New York City in King's car. After picking up Ricardo Montano, a New York drug dealer, King gave him one large package. At King's request, McKenzie bent down in the front seat and gave Montano a second package. King then drove Montano to the bus station from which Montano boarded a bus and transported the packages to Durham, North Carolina. King and McKenzie returned to North Carolina in King's car.
 
 
 5
 Upon his arrival in Durham, Montano was arrested by local police. He agreed to cooperate and, based on information supplied by him as well as information from a three-week investigation of King, the police applied for a warrant to search the apartment at 104 DuPont Circle. The local county magistrate issued the warrant authorizing the search.
 
 
 6
 Within six hours of Montano's arrest, a search of the apartment was carried out by city and federal law enforcement officials. Only McKenzie was present when the police arrived, and he denied that there were any weapons in the apartment. A search of McKenzie's bedroom, however, revealed a loaded .22 caliber pistol hanging inside the closed door of McKenzie's bedroom closet and a knife with marijuana residue. In King's bedroom, two grams of 60 percent pure cocaine and a number of weapons were found. Other drugs and materials commonly used in the sale of drugs, e.g., scales, were found in the kitchen. The district court denied McKenzie's motion to suppress the items found in his bedroom. After a bench trial, he was convicted on three counts and sentenced under the Guidelines to 108 months imprisonment. This appeal followed.
 
 II
 
 7
 McKenzie contends that the search of his bedroom was unconstitutional because his room was a separate "sub-unit" within the apartment and the application for the search warrant showed probable cause only for a search of the premises occupied by King. Therefore, he argues, the district court erred in denying his motion to suppress all items found in his bedroom. The defendant further contends that the evidence adduced at trial was insufficient to sustain the conviction for use of a firearm during a drug trafficking crime and that the district court erred in denying the motion for acquittal on that count. Finally, defendant contends that the district court erroneously applied the Sentencing Guidelines when it determined that the defendant was a "manager or supervisor" in the criminal activity. We address each of these contentions in turn.
 
 
 8
 The basis of McKenzie's search and seizure argument is that the police knew that he occupied the apartment with King but nevertheless failed to make any showing of probable cause for the search of his separate bedroom. This prior knowledge of the police, however, does not bring this case within the ambit of the "multiple-occupancy" cases which hold that a warrant describing an entire apartment building will not support a search of all the apartments in that building if probable cause exists to search only one apartment. See, e.g., United States v. Votteller, 544 F.2d 1355, 1363 (6th Cir.1976). The apartment occupied by King and McKenzie was clearly not such a "multiple-occupancy" unit. There is nothing to suggest that King could not easily have hidden drugs or related paraphernalia in the bedroom across the hall from his. The open presence of drug paraphernalia in the apartment's common areas suggests that there was no secrecy between the roommates about the drug operations. The warrant, although based only on knowledge of King's criminal activities, was sufficiently broad to support the search of defendant's bedroom.
 
 III
 
 9
 McKenzie next argues that the mere presence of a loaded pistol in his bedroom closet is insufficient evidence of use of a firearm in a drug trafficking crime. A conviction under 18 U.S.C. § 924(c)(2) will be upheld if, viewing the evidence in the light most favorable to the government, it is shown that the firearm had "some relation or connection" to the underlying narcotics crimes. United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). It is not necessary that the firearm actually be used, displayed or in a defendant's actual possession; it is sufficient that the possessor of the firearm intended to have it available for use during the commission of drug crimes. The fact that the firearm was loaded and easily accessible, coupled with the evidence of the defendant's on-going participation in drug trafficking, supports a finding that the defendant intended to use it in the event of a contingency.
 
 IV
 
 10
 Finally, McKenzie challenges the Guidelines sentence calculation in a single respect. The district court found that (1) defendant shared an apartment with the overall manager, King; (2) guns were present in the apartment; and (3) defendant travelled to New York with King. Accordingly, the court increased the base offense level by three because it determined that McKenzie was a "manager or supervisor" under Guidelines § 3B1.1(b). We find that this essentially factual determination was not clearly erroneous and we affirm the sentence.
 
 
 11
 In United States v. Daughtrey, 874 F.2d 213 (4th Cir.1989), this Court explained that role in the offense adjustments involve a comparison of a defendant's acts with both the other participants in the crime and the elements of the offense of conviction itself. King was obviously the ringleader of the operation, but McKenzie's efforts to minimize his role in the drug conspiracy are unavailing. The use of the apartment originally leased by McKenzie alone, the trip with King to New York, and the arranging of a sale of firearms to King from Klein point to a fairly substantial role on McKenzie's part. The district court did not clearly err in increasing the offense level.
 
 
 12
 AFFIRMED.