NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0496n.06

No. 10-6262

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 14, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff-Appellee,              )
                                         )     ON APPEAL FROM THE UNITED
v.                                       )     STATES DISTRICT COURT FOR THE
                                         )     MIDDLE DISTRICT OF TENNESSEE
MACARDELL DOBBINS,                       )
                                         )
        Defendant-Appellant.             )

Before: GIBBONS, GRIFFIN and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Macardell Dobbins was charged with

possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and

possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) after Nashville

police executed a search warrant at his residence and discovered cocaine base and a pistol.

A jury convicted Dobbins of the cocaine possession charge but did not reach a unanimous

verdict as to the firearm charge. Dobbins now appeals the district court's denial of his

motion to quash and suppress the search warrant and his motion for a mistrial and argues that

his conviction must also be reversed because of the district court's allegedly erroneous

response to a question from the jury. For the following reasons, we affirm Dobbins's

conviction.

**I.**

On October 3, 2008, Metropolitan Nashville Police Department ("MNPD") officers

went to 3007 Batavia Street, Apartment 2, to conduct a controlled buy of narcotics with the

assistance of a confidential informant. Detective Dale BeCraft and other MNPD officers followed the confidential informant to the Batavia Street address and watched him enter Apartment 2, which was part of a triplex residential building. The officers saw the confidential informant emerge a few minutes later with a substance that later field-tested positive for cocaine base.

The next day, BeCraft obtained a search warrant for Apartment 2 based on the controlled buy. MNPD officers executed the warrant on October 6, 2008. After knocking on the door and announcing themselves as police officers, and having received no response, the officers forced entry into the apartment. BeCraft proceeded to the bathroom where he saw Dobbins standing in front of the toilet. BeCraft testified that the toilet bowl was filling back up with water and several items were floating in the toilet, including a plastic bag containing a substance that later field-tested positive for cocaine base. Other officers encountered Kimwanis Muse in one of the apartment's bedrooms, bedroom two. Dobbins and Muse were read their *Miranda* rights, and the officers then searched the apartment.

On a dresser in bedroom two, an MNPD officer found a small box that contained a silver pistol, a plastic bag of cocaine, and ammunition. In that bedroom, officers also found digital scales, another bag of cocaine, a knife, and a pair of jeans with a bag of cocaine in the pocket.

On January 21, 2009, a federal grand jury returned a two-count indictment charging Dobbins with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), and unlawfully possessing cocaine, in violation of 21 U.S.C. § 841(a)(1). Before trial, Dobbins moved to quash the search warrant and suppress evidence seized as a result of its

2

execution, arguing, *inter alia*, that the search warrant did not particularly identify the place to be searched.  The district court held a hearing on the motion and denied it, ruling that the search warrant identified the place to be searched with sufficient particularity.

After the district court denied Dobbins's motion, Dobbins's counsel orally requested that the court order the government to disclose the identity of the confidential informant. The court agreed and directed the government to reveal the confidential informant's identity to Dobbins's counsel.  The next day, an attorney for the government emailed Dobbins's attorney:

> Here is the rest of the info on the CI involved in this case.  I spoke with the Detective and he informed me that he remembers the CI telling him that he bought narcotics from "Cat Eyes" which is Dobbins [*sic*] street name.

(R. 41-1.)

Dobbins's trial began on June 8, 2010.  The government called BeCraft as its first witness.  When Dobbins's counsel cross-examined BeCraft, he asked him if the confidential informant had told BeCraft that Dobbins was the individual who sold him narcotics at the Batavia Street address.  BeCraft testified that the informant had not told him that Dobbins had sold him narcotics.  Dobbins's counsel then asked BeCraft if the informant had "give[n] [him] any information with regard to a description of any individual who was selling drugs out of 3007 Batavia[.]"  (R. 64, at 140.)  BeCraft responded in the affirmative and testified that the informant gave "[t]he description of a black male with lots of tattoos and distinctive-colored eyes.  He gave a nickname of Cat Eyes."  (*Id.* at 141.)  Dobbins's counsel then attempted to impeach BeCraft by asking him why the informant's description was not included in his police report.  BeCraft testified that the description was not in the report but

3

was in his notes and handed the file jacket on which his notes were taken to Dobbins's counsel. BeCraft testified that the notes on the file jacket said that the informant identified the seller as "Cat Eye," a black male with tattoos.

Dobbins's counsel moved for a mistrial on the ground that the government had withheld the identification information and caused Dobbins's counsel to embark on a prejudicial line of questioning. After hearing argument on the motion, the trial court denied it but indicated that it would instruct the jury not to consider any identification of Dobbins made by BeCraft. However, after the government produced the email in which it had informed Dobbins's counsel that the informant had told the detective he bought narcotics from "Cat Eyes," the trial court determined that Dobbins was not entitled to a limiting instruction because his counsel had known about the identification of his client as the seller for at least a month before trial.

After closing argument, the trial court instructed the jury, in part, as follows:

> The defendant has been charged with more than one crime. The number of charges is no evidence of guilt and this should not influence your decision in any way. It is your duty to separately consider the evidence that relates to each charge and to return a separate verdict for each one of them.
>
> For each charge you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular charge.
>
> Your decision on one charge whether it is guilty or not guilty should not influence your decision on the other charge.

(R. 66, at 125.)

After two hours of deliberations on June 10, the trial court reassembled the jury in order to discharge it for the day and asked if the jurors had any questions. One juror asked

4

the court, "What occurs if we don't reach a 100 percent of us, all—" to which the court responded, "I'll give you an instruction about that. It results in a mistrial. It's called a mistrial. And I'll give you a further instruction in the morning after you have deliberated for a little while." (*Id.* at 135.) However, the court did not instruct the jury on mistrial the next morning.

During the second day of deliberations, the jury sent the court two notes. The first asked if the defendant needed to know that the gun was in the house. The court answered the jury's question in open court by reading to it two instructions from page seven of the jury instructions. A few hours later, the jury sent a second note which read, "Can we mistrial one charge & find a verdict on the other?" The trial court proposed responding "yes," a response to which Dobbins's counsel objected. Dobbins's counsel requested that the trial court merely direct the jury to prior instructions. The trial court responded to the jury's question as follows: "As I instructed you previously you are to consider the two charges separately. The answer to your question is 'yes.'" (R. 58.)

Soon thereafter, the jury reached a verdict. The jury failed to reach a unanimous verdict as to Count one, which charged Dobbins with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) but returned a unanimous guilty verdict as to Count two, which charged him with unlawfully possessing cocaine in violation of 21 U.S.C. § 841(a)(1).

## II.

Dobbins argues that the district court erred in denying his motion to quash the search warrant and suppress all fruits of the search of the apartment at 3007 Batavia Street.

5

Dobbins claims that the search warrant was void because it did not describe the place to be searched with sufficient particularity—rather, Dobbins argues, it authorized the search of the entire triplex building when cause had only been shown to search one unit of that building. We do not agree.

We review *de novo* the district court's determination that a search warrant describes the place to be searched with sufficient particularity. *United States v. King*, 227 F.3d 732, 750 (6th Cir. 2000). As the Supreme Court explained in *Maryland v. Garrison*:

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

480 U.S. 79, 84 (1987).

We employ "a two-part test for determining whether a description in a warrant is sufficient to satisfy the particularity requirement: (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *King*, 227 F.3d at 750. "A warrant describing an entire building when cause is shown for searching only one apartment is void." *United States v. Votteller*, 544 F.2d 1355, 1363 (6th Cir. 1976).

In pertinent part, the search warrant at issue in this case described the place to be searched as follows:

> The target structure is located at 3007 Batavia Street. The target structure is [*sic*] one story residential triplex. The target structure is red brick with white trim. Facing the target structure from Batavia Street there are the numbers

6

3007 over the number 1 affixed upon a door which faces Batavia Street. Facing the target structure from Batavia Street the target door is located on the left side of the target structure. Facing this side of the target structure the target door is the door on the left. The target door is the second door from Batavia Street on this side of the target structure. The target door is tan in color. The search shall also include all outbuildings, outhouses and storage buildings, all vehicles found thereon, and all vehicles in close proximity which have a nexus to the location or persons present at the location for the aforesaid evidence . . . .

(R. 26-2.)

Dobbins argues that this language describes the entire 3007 Batavia Street triplex when cause was only shown to search one unit of the building, the unit from which the confidential informant purchased cocaine.

In *Votteller*, a case on which Dobbins relies heavily, the search warrant authorized the search of a multi-use, three story building which contained a bar on the first floor and residential apartments on the second and third floors. *Votteller*, 544 F.2d at 1362. The *Votteller* warrant described the premises to be searched as follows:

> 57 Euclid Avenue, Kenton County, Kentucky. A three-story red brick structure, the first floor of which contains the Starlight Bar, 224 Elm Street, Ludlow, Kentucky. This structure also has an entrance onto Euclid Avenue, known as 57 Euclid Avenue. Within this 3-story structure is located telephone number 581-8421. This structure is located on the northeast corner of the intersection of Elm Street and Euclid Avenue, Ludlow, Kentucky.

*Id.* We held that the warrant was insufficiently particular because it failed to state that only the Starlight Bar was the subject of the search warrant; rather, it authorized a search of the entire building, including residential units for which no probable cause had been shown. *See id.* at 1362–64.

Unlike the search warrant at issue in *Votteller*, the warrant in this case does not describe an entire building as the place to be searched. After generally describing the target

7

structure as a "residential triplex," the warrant describes the "target door"—the door behind which the officers were authorized to search. The warrant notes that "[f]acing the target structure from Batavia Street there are the numbers 3007 over the number 1 affixed upon a door which faces Batavia Street." (R. 26-2.) We can reasonably infer that the number 1 referred to unit 1 of 3 in the triplex. The warrant then states, "Facing the target structure from Batavia Street the target door is located on the left side of the target structure . . . . The target door is the second door from Batavia Street on this side of the target structure." (*Id.*) These two sentences make clear that the warrant authorized the search of only one unit in the triplex. In describing the target door as "on the left side" of the structure and as "the second door," the warrant described the door next to unit 1— *i.e.* unit 2. That is precisely the place that was searched. Accordingly, the district court did not err in concluding that the warrant described with sufficient particularity the place to be searched: unit 2 of the triplex.

Dobbins's construction of the language of the warrant is strained: He argues that by using the term "target door," the warrant did not limit the search to the unit behind that door, but rather merely identified the focus of the investigation, while allowing a search of the entire triplex. Dobbins points to language in the warrant authorizing the search of "all outbuildings, outhouses and storage buildings" as evidence that the warrant authorized a search of the entire triplex.

This is an unpersuasive interpretation of the warrant's language. The other two units of the triplex were not outbuildings, outhouses, or storage buildings—they were other residential units. We reject Dobbins's interpretation of the warrant. Because the warrant did not authorize a search of the entire triplex or create a reasonable probability that officers

8

would search the wrong unit of the triplex, the warrant was sufficiently particular. *See King*, 227 F.3d at 750.

## III.

Dobbins next argues that his right to a fair trial was violated by the government's prejudicial failure to disclose BeCraft's rough notes concerning the confidential informant's identification of Dobbins as the seller of the narcotics purchased during the controlled buy. Dobbins points to two, independent bases requiring the government to disclose BeCraft's notes—the court's oral order at the conclusion of the suppression hearing on May 11 and Federal Rule of Criminal Procedure 16(a)(1)(E).

We reject Dobbins's argument that the government failed to comply with the court's oral order to disclose information regarding the confidential informant. Contrary to Dobbins's claim, the court never directed the government to disclose to Dobbins's counsel all of its written records related to the confidential informant. The court's oral order directed the government to tell Dobbins's counsel (1) the confidential informant's identity and criminal record, if any; and (2) whether the confidential informant said he got drugs from Dobbins. The government told Dobbins's counsel precisely what it was ordered to tell him—that the confidential informant told BeCraft that an individual whose street name was "Cat Eyes" sold him the drugs and that Dobbins went by that street name. The government therefore complied with the district court's order.[1]

---

[1] Dobbins argues that the government violated the court's order by failing to tell Dobbins's counsel that the confidential informant described the man who sold him drugs as a black man with tattoos and distinctive eyes. Though the government could have relayed the description the confidential informant gave BeCraft more completely, the district court's order did not direct the government to give such specifics. (R. 80, at 28–29.) Moreover, the email description of the seller

Detective BeCraft's notes also were not discoverable under Federal Rule of Criminal Procedure 16. Rule 16(a)(1)(E) provides that, upon defendant's request, the government must permit the defendant to inspect items such as documents in its possession if: "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Dobbins argues that BeCraft's notes were material to preparing his defense.

We review a district court's rulings under Rule 16 for an abuse of discretion. *United States v. Jordan*, 544 F.3d 656, 667 (6th Cir. 2008). It is a defendant's burden to make a *prima facie* showing of materiality in order to obtain disclosure of a document under Rule 16. *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991).

"Materiality under Rule 16 has not been authoritatively defined in this Circuit." *United States v. Lykins*, 428 F. App'x 621, 624 (6th Cir. 2011) (*per curiam*). However, we have recently stated "that information which does not counter the government's case or bolster a defense is not material 'merely because the government may be able to use it to rebut a defense position.'" *Id.* (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). "Rather, there must be an indication that pre-trial disclosure [of the contested document] would have enabled the defendant to 'alter the quantum of proof in his favor,' not merely that a defendant would have been dissuaded from proffering easily impeachable evidence." *Id.* (quoting *Stevens*, 985 F.2d at 1180); *see also United States v. Caro*, 597 F.3d

as "Cat Eyes" was sufficient to put Dobbins's counsel on notice that he might wish to seek clarification regarding the informant's identification of Dobbins before attempting to impeach BeCraft.

608, 621 (4th Cir. 2010) ("For the defendant to show materiality under this rule, '[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'" (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975))); *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003) ("There must be some indication that the pretrial disclosure of the item would enable the defendant significantly to alter the quantum of proof in his favor.") (internal quotation marks and alterations omitted); *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995) (to make a *prima facie* showing of materiality the "defendant must demonstrate that the object would have been helpful to his or her defense."); *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir. 1975) (to be material, "[t]here must be some indication that . . . disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor"); *but see United States v. Marshall*, 132 F.3d 63, 67–70 (D.C. Cir. 1998) (inculpatory evidence may be discoverable under Rule 16(a)(1)(E)(i). "In assessing materiality, we consider the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole." *Lykins*, 428 F. App'x at 624 (citing *Stevens*, 985 F.2d at 1180).

In *Lykins*, we held that the government did not violate Rule 16(a)(1)(E) by failing to disclose a photograph showing the defendant holding a firearm because the photograph was not material to the preparation of defendant's defense in a prosecution for being a felon in possession of a firearm. *Id.* at 622, 624–25. The disputed photograph, which was admitted in the government's rebuttal case, showed the defendant holding a rifle other than the one

11

he was convicted of possessing.  *Id.* at 623.  We held that the photograph was not material, noting that the photograph showed the defendant holding a different firearm than the one he was charged with possessing, and reasoning that it would not have aided him in refuting the government's case against him.  *Id.* at 624.  We acknowledged that "[t]he photograph was unfavorable to defendant because it contradicted his testimony that he had not held or hunted with a gun," but we held that "a Rule 16 violation cannot be sustained based merely on an argument that disclosure would have resulted in reconsideration of defendant's decision to testify or formulation of a more effective defense strategy."  *Id.* at 624–25.

Dobbins's argument that BeCraft's rough notes were discoverable under Rule 16(a)(1)(E) is not persuasive for two reasons.  First, under the majority view—the view we took in *Lykins*—Rule 16(a)(1)(E) compels the disclosure only of information which "alter[s] the quantum of proof *in [the defendant's] favor*."  *Lykins*, 428 F. App'x at 624 (emphasis added); *accord Caro*, 597 F.3d at 621; *Jordan*, 316 F.3d at 1251; *Olano*, 62 F.3d at 1203; *Stevens*, 985 F.2d at 1180; *Ross*, 511 F.2d at 762–63.  BeCraft's testimony that his notes reflected the confidential informant's description of the seller as a man with distinctive eyes who went by the street name "Cat Eyes" was clearly not evidence that altered the quantum of proof in Dobbins's favor.  Rather, the notes tended to support the government's case by showing that Dobbins was selling narcotics from the Batavia Street address.

Second, as we held in *Lykins*, "information . . . is not material 'merely because the government may be able to use it to rebut a defense position.'"  *Id.* (quoting *Stevens*, 985 F.2d at 1180).  The fact that BeCraft took notes reflecting the confidential informant's physical description of the seller matching Dobbins's description undermined Dobbins's

attempt to impeach BeCraft.  Indeed, this is precisely why Dobbins argues he was prejudiced by the non-disclosure.  Had he known about the notes, Dobbins's counsel would not have elicited testimony about the confidential informant's description of the seller in an attempt to impeach BeCraft.  Like the photograph at issue in *Lykins*, the notes on BeCraft's case folder were unfavorable to the defense, and the disclosure of the notes would likely have resulted in "formulation of a more effective defense strategy." *Lykins*, 428 F. App'x at 625.  But in *Lykins* we held that this is not enough to render the undisclosed document material. *Id.*  Accordingly, we conclude that there was no Rule 16 violation as a result of the government's failure to disclose BeCraft's notes, and the trial court did not err when it denied Dobbins's motion for a mistrial.[2]

## IV.

Dobbins next argues that the trial court's response to the jury's question, "Can we mistrial one charge & find a verdict on the other?" was incorrect in substance and form. Dobbins argues that the portion of the court's response that stated, "The answer to your question is 'yes'" improperly indicated to the jury that it could declare itself hung, in contravention of Federal Rule of Criminal Procedure 31(b)(3)'s dictate that only the court can declare a mistrial. Dobbins further argues that by including the word "yes" in its response, the court improperly and prejudicially influenced the jury's deliberative process, causing it to break its deadlock before it had finished deliberating.  Dobbins claims that the

---

[2]Because we find no Rule 16 violation, we need not reach Dobbins's argument that the government's email failed to cure the Rule 16 violation.

district court's answer caused the jury to reach an impermissible compromise verdict, requiring reversal of his conviction.

"The district court's actions in responding to questions from the jury are reviewed for abuse of discretion." *United States v. Khalil*, 279 F.3d 358, 367 (6th Cir. 2002) (internal quotation marks omitted). There is "a high standard for reversal of a conviction on the grounds of improper instructions." *Id.* (internal quotation marks omitted). We "may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Id.* (internal quotation marks omitted).

The court did not abuse its discretion when it answered the jury's mistrial question. Nothing in the district court's answer encouraged the jury to usurp the court's power to declare a mistrial. Reading the trial court's initial instruction on separately considering the charges against Dobbins, the jury's question, and the trial court's response together, it is apparent that the jury was neither confused nor misled by the trial court's response. The jury's question counterposed "mistrial[ing] one charge" with "find[ing] a verdict on the other." This suggests that the jury believed "mistrial[ing]" merely to be the opposite of "find[ing] a verdict . . . ." If we read the jury's question naturally, we must conclude that it was asking if it could find and return a unanimous verdict on one count, but not another.

In first responding, "[a]s I instructed you previously you are to consider the two charges separately," the district court referenced its earlier instructions in which it correctly instructed the jury that "[i]t is your duty to separately consider the evidence that relates to each charge and to return a separate verdict for each one of them." (R. 58; R. 66, at 125.) Only then did the court respond that the answer to the jury's question was "yes." (R. 58.)

14

Reading the two parts of this response together, it is clear that the district court conveyed to the jury that it must consider Counts one and two separately, but if it did so, and could not reach a verdict on one of the counts, it could return a verdict on the other count. Reversal is appropriate "only if the instructions, *viewed as a whole*, were confusing, misleading and prejudicial." *Khalil*, 279 F.3d at 367 (emphasis added) (internal quotation marks omitted.) The court's answer here did not mislead the jury into believing it could declare a mistrial, rendering reversal unwarranted.

Dobbins argues that by using the word "yes" the district court improperly encouraged the jury to reach a compromise verdict. It is true that a court's last-minute, incorrect instruction in response to a question from a "hopelessly deadlocked" jury may warrant reversal if the instruction is akin to "a plain hint from the judge that a verdict ought to be forthcoming." *Bollenbach v. United States*, 326 U.S. 607, 611–13 (1946). However here, unlike in *Bollenbach*, there is simply no evidence in the record that the jury was "hopelessly deadlocked." Further, the trial court's instruction did not hint to the jury that a verdict should be forthcoming—it reiterated that the jury must consider the charges separately. Contrary to Dobbins's argument, *Bollenbach* did not hold that any use of the word "yes" in response to a jury's question impermissibly encourages it to reach a compromise verdict.

Dobbins also relies on *United States v. Davidson*, 367 F.2d 60, 62–63, 65 (6th Cir. 1966), in support of his argument that the court encouraged the jury to reach an impermissible compromise verdict. But the facts of *Davidson* are readily distinguishable. In *Davidson*, the jury reported to the court that it had reached an "impasse," and after further deliberations, reported that it was "conclusively deadlocked." *Id.* After resuming

15

deliberations the following week, the jury sent a note to the court asking if it could recommend leniency in the event that it returned a guilty verdict. *Id.* The court told the jury that sometimes juries recommended leniency, and "you may do it in this case," but also told it that the leniency recommendation would not be binding on the court. *Id.* About thirty minutes later, the jury returned guilty verdicts against both defendants with recommendations of leniency. *Id.* at 63. In *Davidson*, the circumstances surrounding the return of the guilty verdicts strongly suggested that the jury had reached a compromise verdict, or had otherwise been improperly influenced by the district court's response to its question.

Unlike in *Davidson*, here the jury never reported that it was deadlocked—a situation that might give rise to a desire to reach a compromise verdict. In fact, the jury never indicated that it was encountering any obstacles in its deliberations. In reiterating to the jury that it must consider each count separately, the trial court actually *minimized* the likelihood that the jury would reach a compromise verdict. Dobbins's argument that he was prejudiced by an impermissible compromise verdict is too speculative to warrant relief, especially given the deferential abuse of discretion standard of review with which we review a trial court's responses to questions from the jury.[3]

## V.

For the reasons stated herein, we affirm the judgment of the district court.

---

[3]Because we find no error, we need not address Dobbins's argument that cumulative error rendered his trial fundamentally unfair.